OPINION
{¶ 1} Defendant-appellant, Ricardo E. Jackson, appeals from a judgment of the Franklin County Court of Common Pleas finding him guilty of one count of aggravated arson and one count of intimidation of a crime witness and sentencing him accordingly. Because appellant's intimidation conviction is not supported by sufficient evidence, we reverse that portion of the judgment, but affirm the judgment with respect to the aggravated arson conviction. We also remand the case to the trial court to correct the portion of the judgment entry which mistakenly identifies the aggravated arson conviction as a first degree felony rather than a second degree felony.
{¶ 2} By indictment filed July 13, 2001, appellant was charged with two counts of aggravated arson in violation of R.C. 2909.02(A) and one count of intimidation of a crime victim or witness in violation of R.C. 2921.04. These charges arose from events which occurred on July 4 and 5, 2001, at 44 Woodland Avenue in Columbus, Ohio. Appellant entered a not guilty plea to the charges and the case proceeded to a jury trial.
{¶ 3} The state presented the following evidence at trial. Sheila Gardner was the first witness to testify. Gardner stated that appellant had been living with her in her apartment at 44 Woodland Avenue for about one year. On the morning of July 4, 2001, she and appellant went to the grocery store and bought food to grill and alcoholic beverages. After returning to her apartment, appellant lit a charcoal smoker-type grill between 1:30 and 2:00 p.m. that day. The smoker was located on an elevated deck on the back of Gardner's apartment. Although Gardner did not see appellant prepare or light the smoker, she saw large flames after it was lit. She warned appellant about the height of the flames and told him that the fire could burn the rail of the deck. Appellant then moved the smoker away from the rail.
{¶ 4} Gardner further testified that appellant grilled food for two hours. During that time, he apparently had to use more charcoal and lighter fluid to keep the food cooking. Also during those two hours, she and appellant argued because she had refused to buy drugs for him. According to Gardner, the two argued on and off during the day, although she was trying to stay away from him as much as she could.
{¶ 5} By 9:30 that night, Gardner said that appellant was drunk and becoming more hostile. Subsequently, appellant moved inside the apartment and Gardner was cleaning up the back deck. She testified that, at approximately 10:00 to 10:30 p.m., appellant began yelling at her to come inside or he was going to beat her. Gardner, now afraid of appellant, ran down the steps of the back deck and went over to a security guard of a nearby condominium complex. Gardner stated that there was nothing wrong with the deck when she left. Gardner called 911 and told the police that she had been threatened and felt afraid.
{¶ 6} A police officer arrived about an hour later. Two more officers arrived at the scene and proceeded to enter Gardner's apartment. Gardner initially stayed behind, but eventually went back to the apartment after the police arrested appellant. She saw her clothes, mattress and other personal property thrown outside of her apartment. The tires on her car were also slashed. As Gardner walked up the back steps of her deck, the officers warned her to avoid a smoldering hole on the back deck near the steps. Gardner saw smoke coming from the hole in the deck, although she did not see any flames. Upon entering her apartment, she noticed that her television was disconnected from the VCR and was overturned. Subsequently, three of Gardner's friends came over to help her gather her personal property.
{¶ 7} In the early morning hours of July 5, 2001, Gardner's phone rang several times. The caller identification on Gardner's phone displayed "Franklin County" and she assumed the calls were from appellant calling from the Franklin County jail. After a few phone calls, one of Gardner's friends, Patrice Barrow, answered the phone and spoke to appellant. Gardner did not speak with appellant.
{¶ 8} On cross-examination, Gardner admitted telling appellant's investigator that, when appellant began cooking around noon, some coals fell out of the smoker and onto the deck. However, Gardner testified that the coals were not hot and that appellant picked up the coals. Gardner also admitted that she had previously written a statement of events in which she indicated that appellant was smoking food until 6:00 or 8:00 p.m. She had previously stated that appellant finished cooking between 4:00 and 5:00 p.m. In another written statement, Gardner stated that appellant restarted the smoker around 5:00 p.m.
{¶ 9} Next to testify was Steven Magaw, a Columbus Police Officer, who was dispatched to Gardner's apartment on July 4, 2001, in response to a call. He arrived on the scene at about 11:30 p.m. When he arrived, another officer was already talking to Gardner. Officer Magaw stated that Gardner was hysterical, screaming and quite scared. As Officer Magaw walked to the rear of Gardner's apartment, he saw clothes, a mattress and other personal property strewn about on the ground. He and his partner, Officer Burich, then walked up the steps to the back deck. Officer Magaw noticed smoke coming from a smoldering hole in the deck.
{¶ 10} After a few minutes on the deck, the officers spoke with appellant. Officer Magaw described appellant as extremely intoxicated, angry and yelling. Appellant also had a strong odor of alcohol about him and he exhibited slurred speech. When Officer Magaw asked him who had caused the mess inside and outside the apartment, appellant told him that "she just made me mad, so I threw it out." Appellant was then arrested and placed into the police cruiser. Officer Magaw described appellant as very upset. Appellant was also cursing at the officers. Shortly thereafter, appellant urinated in the cruiser.
{¶ 11} Columbus Police Officer Jeffrey Tabor testified next. Officer Tabor was the first officer to arrive at the scene, a little before 11:30 p.m. He spoke with Gardner and described her as very excited, crying and afraid. While Officers Magaw and Burich walked around to the rear of Gardner's apartment, Officer Tabor remained with Gardner. When he received word from the other officers that appellant was no longer in the apartment, he went up to the apartment. As Officer Tabor went up the steps to the deck, he saw that a fire was burning a hole in the deck. Officer Tabor testified that he tried to put out the fire by dumping a pan of water on it but he could not completely put it out. Although he was able to put out the flames visible on the top of the deck, there were still flames on the bottom of the deck, which he could not extinguish. He then called the fire department.
{¶ 12} Next to testify was Captain William E. Robinson, Jr., of the Columbus Division of Fire. Captain Robinson was among the first fire fighters to arrive at the scene. He testified that, as he walked to the rear of the apartment building, he saw personal belongings scattered everywhere. Captain Robinson walked to the top of the back deck where he saw a fire that was still smoldering and burning. He did not see any flames from the fire but the fire was still smoking. He testified that he thought the fire had been a substantial fire for a short period of time.
{¶ 13} Captain Robinson then began to determine whether the fire looked accidental or intentional. He ruled out electrical causes for the fire, as there was no electricity near the hole. He also ruled out lightning as a cause, as it had not rained that night. Captain Robinson saw the smoker in the corner of the deck a couple feet away from the hole. He put his hand on the smoker and it felt cool to the touch. He did not believe the smoker was close enough to have started the fire. He also opined that, even if a coal or ember had accidentally fallen from the smoker, it is unlikely to have generated enough heat to ignite the deck. Nor did he see any evidence that an accelerant, such as lighter fluid, caused the fire. Finally, Captain Robinson spoke with Gardner. She told him that she thought appellant set the fire and wanted to kill her. All of this raised Captain Robinson's concerns. He then called a fire investigator to further examine the fire scene.
{¶ 14} After being qualified as an expert witness, Larry Pfeifer, an investigator for the Columbus Division of Fire, testified that he arrived at the scene between 12:30 and 1:00 a.m., and walked past clothes and other items scattered across the back yard. He also saw a car with four punctured tires. He then walked up the back steps and saw a hole in the deck. Pfeifer testified that the deck was made of pressure-treated lumber that was relatively new. Treated lumber is infused with a solution to prevent rotting and destruction by insects. Treated lumber has more moisture in it than non-treated lumber and, because of that extra moisture, is much more difficult to ignite and burn than non-treated lumber.
{¶ 15} Pfeifer's investigation of the scene eliminated the smoker as a source of the fire. He testified that the shape of the hole was not indicative of a round object and did not conform to the round bottom of the smoker located on the deck. He also felt the smoker would not have been hot enough to start a fire, as he was able to touch the smoker's bottom with his bare hand. Pfeifer also eliminated an accidental coal falling out of the smoker as the cause of the fire. He stated that the moisture in the lumber would resist any smoldering and that one or two coals by themselves would not retain enough heat to ignite the lumber and could not have burned through such a thick piece of wood.
{¶ 16} Pfeifer testified that the burn pattern in the wood indicated the fire burned from the top down. He indicated that fires normally burn upward and outward. He also stated that fires burn down very, very slowly. This fire burnt down through the deck and a joist below the deck. This deep burn into the wood and the irregular shape of the hole led Pfeifer to believe that an accelerant was used to start this fire. An accelerant is any flammable or combustible material which accelerates the speed of a fire. An accelerant burns off and is consumed as the fire burns. Pfeifer was then asked about lighter fluid as an accelerant. He testified that it would take several applications of charcoal lighter fluid to start this fire. Pfeifer saw a near-empty bottle of charcoal lighter fluid in a garbage can located inside the apartment. It was Pfeifer's expert opinion that this fire was intentionally set by use of an accelerant.
{¶ 17} On cross-examination, Pfeifer admitted that samples of the burnt wood were not examined for the presence of accelerants and that trained dogs did not alert to the presence of any accelerants on the deck. Pfeifer also testified that he could not say exactly what accelerant was used or how much was used to start this fire. Pfeifer ruled out gasoline as the accelerant, but could not rule out diesel fuel or kerosene. It was Pfeifer's expert opinion that accidental splashes of lighter fluid could not have caused this fire.
{¶ 18} Patrice Barrow was the last witness to testify. She had been friends with Gardner for the past 20 years and had also known appellant for about one year. In the early morning hours of July 5, 2001, she received a phone call from another friend of Gardner's who told her that Gardner was upset and wanted Barrow to come over to her apartment. Barrow arrived at the apartment sometime around 3:00 a.m. Thereafter, Gardner's phone rang. Barrow answered the phone and spoke with appellant. Appellant seemed upset and wanted to talk to Gardner. Barrow would not let him talk to Gardner. Appellant then told Barrow to "tell Shelia I'm going to kill her when I get out of here" and ended the conversation by warning, "I'm going to make her life a living hell when I get out of here."
{¶ 19} The state then rested its case. Appellant presented no witnesses. After deliberating, the jury found appellant guilty of one count of aggravated arson and one count of intimidation of a victim or witness. The other aggravated arson count was previously dismissed by the court. The trial court sentenced appellant to a prison term of five years for each count and ordered those sentences to be served consecutively for a total prison sentence of 10 years.
{¶ 20} Appellant appeals, assigning the following assignments of error:
[1.] The trial court erred when it entered judgment against the defendant on the charge of aggravated arson when the evidence was insufficient to sustain the conviction and the conviction was against the manifest weight of the evidence when the state failed to prove that the defendant knowingly caused the fire damage to the deck where he had been grilling.
[2.] The trial court erred when it entered judgment against the defendant on the charge of intimidation of a victim or witness arson when the evidence was insufficient to sustain the conviction and the conviction was against the manifest weight of the evidence when the state failed to prove that the defendant knowingly, by unlawful threat, attempted to intimidate a victim of a crime in the prosecution of criminal charges or to influence a witness in the discharge of her duties.
[3.] The trial court erred when it:
(1) Convicted the defendant of aggravated arson as a first-degree instead of a second-degree felony.
(2) Imposed the maximum sentence on the intimidation charge when the record did not provide grounds for the imposition of the maximum sentence.
(3) Imposed consecutive sentences when the record did not provide grounds for the imposition of consecutive sentences.
[4.] The defendant was deprived of his constitutional right to present evidence on his own behalf when the trial court ruled that the defendant could not call a Deputy Sheriff who was present when the defendant made the alleged threats during a telephone conversation from the jail and when the trial court changed the date of sentencing without proper notice thereby depriving the defendant of his ability to present evidence in mitigation of his sentence.
[5.] The trial court erred when it gratuitously, and to the prejudice of the defendant, informed the jury that one of the prosecutors in the case was going to another courtroom to testify in a murder case where one of his witnesses had been murdered. The court further erred when it allowed prejudicial evidence of other bad acts to be admitted over the defendant's objection.
[6.] The defendant was deprived of his constitutional right to present evidence on his own behalf when the trial court ruled that the defendant could not admit the properly identified and authenticated report of the fire investigator in order to establish a bias and a fault in the conclusion of the investigator.
{¶ 21} In addition, this court granted appellant's pro se motion for leave to file a supplemental brief in support of his appeal. In that brief, appellant asserts these additional assignments of error:
[1.] It was an abuse of discretion which erred to the substantial prejudice of defendant, which infected the entire trial, when the trial court placed an unreasonable expectation to the jury regarding how long the trial would last in violation of defendant's rights as guaranteed under the Fifth and Fourteenth Amendments to the United States Constitution, Article One Sections Ten and Sixteen of the Ohio Constitution, to due process and equal protection.
[2.] The state erred to the substantial prejudice of defendant when the state failed to provide discovery upon proper request in violation of theFifth, Sixth and Fourteenth Amendments to the U.S. Constitution, Article One Sections Ten and Sixteen of the Ohio Constitution.
[3.] The trial court erred to the substantial prejudice of the defendant in permitting the "other acts" evidence to be submitted into evidence, over objection, when such admission violated Defendant's Fifth
and Fourteenth Amendment right [sic] to be notified of the charges against him.
[4.] The trial court erred to the substantial prejudice of defendant in the admission of photographically depicted "other acts" evidence when such evidence was admitted on the value of the states' argument that an "officer" would testify that defendant admitted the commission of such "other acts" to said officer; when in fact, no such testimony was forthcoming in violation of defendant's rights under the Sixth Amendment to the United States Constitution, Article One Sections Ten and Sixteen of the Ohio Constitution.
[5.] The trial court erred to the substantial prejudice of the defendant when it permitted, over objection, the introduction of other acts on states' theory that the alleged commission of the other acts was part and parcel of the offenses for which appellant was indicted.
[6.] The trial court erred to the substantial prejudice of defendant by permitting, over objection, that states' witness Pfiefer [sic] was an "expert" based on his "continuing education" when no such basis in fact, existed; in violation of defendant's right to due process and equal protection as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, Article One, Sections Ten and Sixteen of the Ohio Constitution.
[7.] The verdict of guilty to the offense of aggravated arson is insufficient as a matter of law, regarding evidence to uphold such verdict, when the states' own witness testified, that in fact, the hole upon the wooden deck could have been caused by accident, in violation of defendant's due process and equal protection rights as guaranteed by theFifth and Fourteenth Amendments to the U.S. Constitution, Article One Sections Ten and Sixteen of the Ohio Constitution.
[8.] The evidence is insufficient as a matter of law to sustain the verdict of guilty to the charge of aggravated arson because the fire/arson investigator depended upon layman's statements to arrive at his conclusion that the hole upon the deck was occasioned by an incendiary act; in violation of defendant's right to due process and equal protection as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, Article One, Sections Ten and Sixteen of the Ohio Constitution.
[9.] The evidence is insufficient as a matter of law to sustain the verdict of guilty to the offense of intimidation of a crime victim or witness because hearsay, alone, without corroboration, will not sustain this verdict. The verdict violates the defendant's right to due process and equal protection as guaranteed by the Fifth and Fourteenth Amendments to the Ohio [sic] Constitution, Article One Sections Ten and Sixteen of the Ohio Constitution.
[10.] The states' attorney's committed acts which violate the letter and spirit of the federally protected right to a fair trial as guaranteed by the Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution, Article One Sections Ten and Sixteen of the Ohio Constitution.
[11.] Counsel did not object to any part of the jury charge as given. However, failure by counsel to object, as required by Crim.R. 30, does not prevent application of the plain error rule.
[12.] Counsel failed to procure the services of an independent fire/arson investigator: In September, 2001, defendant submitted a letter to the court enumerating 18 to 22 matters requested of counsel to be completed prior to and in preparation for trial which was filed by the trial court. Securing an investigator relative the arson charge was one such request which counsel failed to honor.
{¶ 22} For ease of analysis, we will address these assignments of error out of order. Because we have been presented with two briefs setting forth multiple assign-ments of error — some of which bear the same number — we will distinguish between them by referring to the assignments of error in appellant's first brief as "appellant's assignments of error" and the assignments of error in appellant's pro se supplemental brief as "pro se assignments of error."
{¶ 23} Appellant contends in his pro se second assignment of error that the state failed to provide the defense with a copy of a fire report drafted by Captain Robinson. During the cross-examination of Captain Robinson, appellant's counsel asked Captain Robinson if he had made any reports regarding the incident. Captain Robinson indicated that he had. Counsel requested a copy of that report pursuant to Crim.R. 16(B)(1)(g). Although the prosecutor first denied having such a report, he later produced the report and provided it to counsel. Appellant now claims the state violated Brady v. Maryland (1963), 373 U.S. 83, by failing to produce Captain Robinson's allegedly favorable report before trial.
{¶ 24} Appellant's reliance on Brady is misplaced because that case concerned the discovery of evidence after trial. Here, after Captain Robinson's direct examination, appellant's counsel requested a copy of his report and the prosecution produced the report. The report was consistent with Captain Robinson's testimony. Therefore, the state did not violate Brady because the state produced the report during the trial. State v. Hanna, 95 Ohio St.3d 285, 2002-Ohio-2221, at ¶ 81; State v. Banks, Franklin App. No. 01AP-1179, 2002-Ohio-3341, at ¶ 34. Appellant's pro se second assignment of error is overruled.
{¶ 25} Appellant's pro se first assignment of error and appellant's fifth assignment of error both contend that the trial court erred by making prejudicial comments during the trial. We first note that counsel did not object to these comments. The failure to object at trial constitutes a waiver of any challenge on appeal, except for plain error. Plain error does not exist unless appellant establishes that the outcome of the trial likely would have been different but for the trial court's alleged prejudicial comments. State v. Waddell (1996), 75 Ohio St.3d 163,166. Notice of plain error is to be taken with utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. State v. Phillips (1995), 74 Ohio St.3d 72, 83; State v. Ospina (1992), 81 Ohio App.3d 644, 647.
{¶ 26} In determining whether the trial court's comments were prejudicial: (1) appellant has the burden to demonstrate prejudice; (2) the trial court is presumed to be in the best position to decide when a breach is committed and what corrective measures are called for; (3) the remarks are to be considered in light of the circumstances under which they are made; and (4) consideration is to be given to their possible effect upon the jury, and to their possible impairment of the effectiveness of counsel. State v. West (Nov. 23, 1999), Franklin App. No. 98AP-1527, citing State v. Wade (1978), 53 Ohio St.2d 182, 188, vacated and remanded on other grounds (1978), 438 U.S. 911; State v. McQueen (1997), 124 Ohio App.3d 444, 449-450.
{¶ 27} Appellant contends in his pro se first assignment of error that the trial court erred by informing the jury that the trial should be done in one day. Appellant contends that this comment placed an unreasonable expectation of finality in the jury's mind and deprived him of an impartial jury. Appellant does not elaborate on how he was prejudiced by the comment. Appellant's mere speculation that the comment affected the jury's mindset is insufficient to demonstrate prejudice. We cannot say this one isolated comment clearly affected the outcome of the trial so as to constitute plain error. West, supra. Accordingly, appellant's pro se first assignment of error is overruled.
{¶ 28} Appellant contends in his fifth assignment of error that the trial court erred in telling the jury that a prosecutor would be leaving the courtroom to testify in another case where a witness had been murdered. Appellant argues that the trial court's comment was prejudicial in light of the fact that appellant was charged with intimidation of a witness. Again, this comment does not rise to the level of plain error. Appellant does not demon-strate how the outcome of the trial would clearly have been different but for the comment. The comment does not, as argued by appellant, imply to the jury that they will be responsible for appellant's future crimes if they fail to convict him of these charges. The comment merely explained to the jury why the prosecutor would not be in the courtroom. Accordingly, this portion of appellant's fifth assignment of error is overruled.
{¶ 29} Next, appellant's pro se third, fourth and fifth assignments of error, as well as the remainder of appellant's fifth assignment of error, all contend that the trial court erred in admitting evidence of other acts appellant allegedly committed that night. Appellant contends that it was error for the trial court to admit testimony and photographs depicting how Gardner's clothes were scattered on the ground and how her car tires were slashed. The state contends that this evidence was properly admitted to establish appellant's motive, intent and "scheme, plan or system."
{¶ 30} The admissibility of other acts evidence is regulated by Evid.R. 404(B). That rule provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Id. Similarly, R.C. 2945.59 allows for the admissibility of any act taken by the accused that would tend to show "motive or intent, the absence of mistake or accident * * * or the defendant's scheme, plan or system." The admissibility of other acts evidence is within the sound discretion of the trial court. State v. Matthews (1992),80 Ohio App.3d 409, 415.
{¶ 31} Evidence of other acts is admissible under the scheme, plan, or system exception in R.C. 2945.59 "where those acts form part of the immediate background of the crime charged, and hence are `inextricably related' to the act alleged in the indictment; that is, where the challenged evidence plays an integral part in explaining the sequence of events and is necessary to give a complete picture of the alleged crime." State v. Thompson (1981), 66 Ohio St.2d 496, 498; State v. Schilling (Feb. 12, 2002), Tuscarawas App. No. 2001AP010001. Officer Magaw testified that, when he asked appellant about the stuff outside, appellant told him that he threw the stuff out because Gardner made him mad. The slashed tires are evidence of other intentional destruction of Gardner's property that night. These acts all took place between the time Gardner left her apartment and returned with the police. They form part of the immediate background of the crimes charged and are inextricably related to those acts. The jury was entitled to a complete picture of the alleged crimes. Thompson, at 498. Therefore, the trial court did not abuse its discretion in admitting the other acts evidence. Appellant's pro se third, fourth and fifth assignments of error are overruled.
{¶ 32} Appellant contends in his fifth assignment of error that it was error to allow testimony that appellant urinated in the back of a police cruiser after he was arrested. The state contends that this evidence was relevant to motive and intent, as appellant remained angry and out of control even after he was arrested. We fail to see how this evidence is relevant to any proper purpose under Evid.R. 404(B) or R.C.2945.59. However, if there is no reasonable possibility that improperly admitted testimony concerning other acts contributed to the appellant's conviction, then the admission constitutes harmless error. State v. Elliot (1993), 91 Ohio App.3d 763, 771; Columbus v. Taylor (1988),39 Ohio St.3d 162, 166. In the case at bar, there is no reasonable probability that this testimony contributed to appellant's conviction for aggravated arson. As will be discussed later, there was significant evidence of appellant's guilt to support the conviction for aggravated arson. Therefore, we cannot say that the admission of this evidence contributed to appellant's aggravated arson conviction and the admission of such evidence is harmless error. Appellant's intimidation conviction will be addressed separately. Appellant's fifth assignment of error is overruled.
{¶ 33} Appellant contends in his pro se sixth assignment of error that the trial court erred in allowing Pfeifer to testify as an expert witness. To qualify as an expert, the witness need not be the best witness on the subject. Alexander v. Mt. Carmel Medical Center (1978),56 Ohio St.2d 155, 159. The expert must demonstrate some knowledge on the subject superior to that possessed by an ordinary juror. Scott v. Yates (1994), 71 Ohio St.3d 219, 221; State Auto Mutual Ins. Co. v. Chrysler Corp. (1973), 36 Ohio St.2d 151, 160. A witness may be qualified as an expert based on special knowledge, skill, experience, training, or education. McConnell v. Budget Inns of Am. (1998), 129 Ohio App.3d 615,625. "The determination of whether a witness possesses the qualifications necessary to allow his expert testimony lies within the sound discretion of the trial court. * * * Such determination will not be reversed by an appellate court unless there is a clear showing of an abuse of discretion on the part of the trial court." Id.; Ayers v. Debucci (2000),137 Ohio App.3d 145, 148. An abuse of discretion involves more than an error of judgment; it connotes an attitude on the part of the court that is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
{¶ 34} Pfeifer testified that he has been employed with the Columbus Division of Fire for 30 years and has been part of the fire investigative unit since 1989. He has taken many classes in fire investigation at the fire department and a local community college, as well as at schools throughout the nation. These classes taught fire investigation methods and the reconstruction of explosions to determine their causes. He has also been certified as an instructor and investigator in fire and explosion investigations. He teaches classes at the State Fire Marshall's office, a local community college, the Columbus Division of Fire, the Ohio Peace Officers Training Center, the Columbus Police Academy, as well as the National Fire Academy in Maryland, where he instructs fire personnel that handle arson and fire investigations throughout the nation. He is also a member of the International Association of Arson Investigators. Pfeifer testified that he has investigated over 500 fires and has been at over 3,000 fires as an investigator and a fire fighter. Additionally, he has previously been qualified to testify as an expert witness in the area of fire investigations in the Franklin County Court of Common Pleas. After reviewing Pfeifer's testimony and qualifications, we cannot say that the trial court abused its discretion in qualifying him as an expert witness, considering his training, experience, and education. State v. Mack (1995), 73 Ohio St.3d 502, 511 (noting that professional experience and training in a particular field may be sufficient to qualify one as an expert).
{¶ 35} Appellant also contends in his pro se sixth assignment of error that the trial court erred in admitting Pfeifer's expert opinion because it was not based on a reliable methodology or scientifically valid principles. Appellant contends that, pursuant to Daubert v. Merrell Dow Pharmaceuticals, Inc. (1993), 509 U.S. 579, the trial court should have excluded the testimony as speculative or unreliable.
{¶ 36} However, appellant's trial counsel never objected or argued to the trial court that Pfeifer's investigation into the cause of the fire was unreliable and should not be admitted. Therefore, we review appellant's pro se assignment of error for plain error. State v. Funk (Oct. 25, 2001), Franklin App. No. 00AP-1352. Appellant has not pointed to any reason why Pfeifer's expert opinion was unreliable. Nor do we see any support for this contention in the record. Therefore, we cannot say that Pfeifer's opinion testimony was so unreliable as to warrant its exclusion.
{¶ 37} Appellant's pro se sixth assignment of error is overruled.
{¶ 38} Appellant contends in his fourth assignment of error that the trial court erred in prohibiting him from calling a witness. Specifically, on the second day of trial, appellant's trial counsel presented the name of Deputy Brian Felkner as a potential witness. Apparently, Deputy Felkner was present when appellant telephoned Gardner from the jail. The state objected to Deputy Felkner's testimony because he had not been named by appellant as a potential witness. Appellant's trial counsel contended that they did not know the name of the exact deputy until trial and that the state would not be surprised by the deputy's testimony because they alluded to this testimony in their opening argument. The trial court prohibited the deputy's testimony due to the failure of appellant's trial counsel to timely disclose to the state that they were even looking for the deputy.
{¶ 39} Even if the trial court's decision to exclude the deputy's testimony was in error, error may not be predicated upon a ruling that excludes evidence unless it affects a substantial right of the party, and the substance of the excluded evidence was made known to the court by proffer or was apparent from the context within which the questions were asked. Evid.R. 103(A); State v. Davie (1997), 80 Ohio St.3d 311, 327. Appellant's trial counsel made no proffer of Deputy Felkner's testimony. Nor is it apparent from the record what his testimony would have indicated. Accordingly, appellant has waived this argument on appeal and this portion of his fourth assignment of error is overruled. See Petitto v. Malaney, Lake App. No. 2001-L-065, 2002-Ohio-2442, at ¶ 9-10.
{¶ 40} Appellant contends in his sixth assignment of error that the trial court abused its discretion in prohibiting the admission of Pfeifer's investigative report into evidence. Appellant contends that the report established bias in Pfeifer's investigation, because it focused on the nature of the crime scene (i.e., the clothes strewn about and the punctured car tires), rather than the cause of the fire.
{¶ 41} The admission or exclusion of evidence lies within the trial court's sound discretion. Rocky River v. Saleh (2000),139 Ohio App.3d 313, 324. Where evidence is of a cumulative nature, it may be properly excluded at the discretion of the trial court. Arthur Young Co. v. Kelly (1993), 88 Ohio App.3d 343, 349. Pfeifer admitted on cross-examination that the majority of his report described what he witnessed at the scene, including clothes thrown about the area and the slashed car tires. His report would simply have been cumulative of his own testimony. Therefore, the trial court did not abuse its discretion in excluding the report, as Pfeifer had already testified at length about the substance of the report. Winkler v. Winkler, Franklin App. No. 02AP-937, 2003-Ohio-2418, at ¶ 83 (affirming exclusion of exhibit where witness had already testified to the information contained in exhibit). Appellant's sixth assignment of error is overruled.
{¶ 42} Appellant's pro se seventh and eighth assignments of error and appellant's first assignment of error contend that his conviction of aggravated arson was not supported by sufficient evidence and was against the manifest weight of the evidence. Appellant was convicted of aggravated arson, in violation of R.C. 2909.02(A)(2), which requires that the state prove that appellant knowingly caused physical harm to an occupied structure by means of fire. Appellant contends that the state failed to prove that appellant knowingly started the fire.
{¶ 43} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. State v. Thompkins (1997), 78 Ohio St.3d 380, paragraph two of the syllabus. Therefore, each standard will be separately delineated.
{¶ 44} The Ohio Supreme Court described the role of an appellate court presented with a sufficiency of the evidence argument in State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus:
An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. * * *
{¶ 45} Whether the evidence is legally sufficient is a question of law, not fact. Thompkins, supra, at 386. Indeed, in determining the sufficiency of the evidence, an appellate court must "give full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson v. Virginia (1979),443 U.S. 307, 319. Conse-quently, the weight of the evidence and the credibility of the witnesses are issues primarily determined by the trier of fact. State v. Yarbrough, 95 Ohio St.3d 227, 2002-Ohio-2126, at ¶ 79; State v. Thomas (1982), 70 Ohio St.2d 79, 79-80. A jury verdict will not be disturbed unless, after viewing the evidence in the light most favorable to the prosecution, it is apparent that reasonable minds could not reach the conclusion reached by the trier of fact. State v. Treesh (2001), 90 Ohio St.3d 460, 484; Jenks, supra, at 273.
{¶ 46} A manifest weight argument is evaluated under a different standard. "The weight of the evidence concerns the inclination of the greater amount of credible evidence offered in a trial to support one side of the issue rather than the other." State v. Brindley, Franklin App. No. 01AP-926, 2002-Ohio-2425, at ¶ 16. In order for a court of appeals to reverse the judgment of a trial court on the basis that the verdict is against the manifest weight of the evidence, the appellate court must disagree with the factfinder's resolution of the conflicting testimony. Thompkins, supra, at 387. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. Id. at 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175.
{¶ 47} The state presented Gardner's testimony which indicated that, when she left her apartment, appellant was angry at her and drunk. No one else was in her apartment and there was nothing wrong with the deck of her apartment when she left. However, when she returned, her clothes were scattered outside on the ground and the tires on her car were slashed. There was also a smoking hole in the deck, which had to be extinguished with water. Pfeifer, the state's expert witness, testified that this fire could not have been caused by the smoker or an accidentally dropped coal or ember from the smoker. He opined that the fire was intentionally set with the use of an accelerant. He also testified that there was an empty bottle of charcoal lighter fluid in Gardner's garbage can. Gardner testified that the bottle was not in the garbage can when she left the apartment, but that appellant had placed it in a cabinet after he was done grilling. After viewing this evidence in a light most favorable to the prosecution, reasonable minds could conclude that appellant set this fire intentionally. Therefore, we find there was sufficient evidence presented to support appellant's aggravated arson conviction.
{¶ 48} The same evidence leads us to conclude that appellant's conviction was also not against the manifest weight of the evidence. Appellant essentially argues that Pfeifer's expert opinion as to the cause of this fire should be disregarded because Pfeifer assumed the fire was intentionally set based upon the surrounding circumstances — not the evidence associated directly with the fire. Appellant points to Pfeifer's report, in which Pfeifer describes the clothes scattered about the property and the other damage to Gardner's property. Appellant contends that Pfeifer's investigation was tailored to conform to this evidence. Appellant points out that no evidence of any accelerant was found on the deck. Appellant also argues that Pfeifer too quickly ruled out the smoker as the cause of the fire.
{¶ 49} However, this court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and the weight to be given the evidence. State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus. "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80.
{¶ 50} Gardner testified that there was no fire when she left appellant alone in her apartment. Yet when she came back, there was a hole smoking in her deck and an empty bottle of lighter fluid in her garbage can. The jury also heard expert testimony that the fire was intentionally started by use of an accelerant. The jury could properly believe Pfeifer's testimony that the fire was intentionally set. We defer to that finding, as the jury was in the best position to make that decision. We cannot say that the jury clearly lost its way resulting in a manifest miscarriage of justice. Accordingly, appellant's pro se seventh and eighth assignments of error and appellant's first assignment of error are overruled.
{¶ 51} Appellant's pro se ninth assignment of error and appellant's second assignment of error contend that his conviction for intimidation of a crime victim or witness was not supported by sufficient evidence and was against the manifest weight of the evidence. Appellant contends that the state failed to prove that appellant's threats were made to influence or intimidate Gardner in the discharge of her duties as a witness or in the filing of criminal charges. We agree.
{¶ 52} Appellant was convicted of intimidating Gardner in violation of R.C. 2921.04(B), which provides, in pertinent part:
No person, knowingly and by force or by unlawful threat of harm to any person or property, shall attempt to influence, intimidate, or hinder the victim of a crime in the filing or prosecution of criminal charges or an attorney or witness involved in a criminal action or proceeding in the discharge of the duties of the attorney or witness.
{¶ 53} Barrow's testimony was the only evidence the state presented to support appellant's intimidation conviction. She answered the phone at Gardner's apartment when appellant called from jail on the morning of July 5, 2001. Barrow testified that appellant told her to "tell Shelia [Gardner] I'm going to kill her when I get out of here" and that he was "going to make her life a living hell when I get out of here."
{¶ 54} After viewing this evidence in the light most favorable to the prosecution, it is apparent that reasonable minds could not reach the conclusion reached by the trier of fact. There is no evidence that appellant made these threats to discourage Gardner from filing charges or from testifying at a later criminal proceeding. See State v. Hummell (June 1, 1998), Morrow App. No. CA-851 (affirming intimidation conviction where threat was clearly made to discourage witnesses' involvement in forthcoming criminal proceedings); State v. Brown, Montgomery App. No. 19113, 2002-Ohio-6370, at ¶ 28 (purpose behind threat must be to discourage witness or victim from being involved in criminal proceedings against accused). In fact, Barrow testified that she thought appellant may simply have been expressing his frustration at being in jail. There must be some evidence of a nexus between appellant's threats and his desire to intimidate or harass Gardner so that she would refrain from cooperating with the prosecution in subsequent criminal proceedings against appellant.[1] The state did not make this showing. Because the state failed to prove that appellant's threats were made in an attempt to intimidate or discourage Gardner from future involvement in criminal proceedings against him, the evidence is insufficient to sustain appellant's conviction for intimidation. Therefore, appellant's second assignment of error is sustained.
{¶ 55} Our disposition of appellant's second assignment of error renders appellant's pro se ninth assignment of error moot. App.R. 12(A).
{¶ 56} Appellant contends in his pro se tenth assignment of error that prosecutorial misconduct deprived him of a fair trial. Generally, prosecutorial misconduct will not provide a basis for overturning a criminal conviction, unless, on the record as a whole, the misconduct can be said to have deprived the defendant of a fair trial. State v. Lott (1990), 51 Ohio St.3d 160, 166. Appellant points to alleged discovery violations and various remarks made during the trial, which he contends deprived him of a fair trial. We disagree.
{¶ 57} Whether the prosecutor's remarks constitute misconduct requires analysis as to: (1) whether the remarks were improper; and (2) if so, whether the remarks prejudicially affected appellant's substantial rights. State v. Noling, 98 Ohio St.3d 44, 2002-Ohio-7044, at ¶ 91, citing State v. Smith (1984), 14 Ohio St.3d 13; Lott, supra. "The touchstone of this analysis `is the fairness of the trial, not the culpability of the prosecutor.' " Noling, supra, quoting Smith v. Phillips (1982), 455 U.S. 209, 219.
{¶ 58} Appellant first contends in his pro se tenth assignment of error that the prosecutor acted improperly during opening argument by misleading the jury to believe that there would be proof that appellant damaged Gardner's personal property and her car. However, the record indicates the prosecutor actually stated that, when Gardner returned to her apartment, she saw her clothes thrown about and her car tires slashed. A prosecutor may make statements as to what he or she, in good faith, expects the evidence will show. State v. Washington (Dec. 30, 1999), Cuyahoga App. No. 74850. The prosecutor's comment accurately portrayed what Gardner later testified to when she returned to her apartment. State v. Lordi (Dec. 4, 2000), Mahoning App. No. 99CA-62. Therefore, the prosecutor's comment was not improper.
{¶ 59} Appellant also contends that the prosecutor improperly commented during closing argument that Gardner's personal property was scattered on the ground and her car tires slashed. As noted earlier, however, the evidence of these other acts was properly admitted into evidence. The general rule is that counsel may comment on evidence admitted at trial. Drake v. Caterpillar Tractor Co. (1984),15 Ohio St.3d 346, 347. The state may also comment freely on " `what the evidence has shown and what reasonable inferences may be drawn therefrom.' " Lott, at 165, quoting State v. Stephens (1970),24 Ohio St.2d 76, 82. The prosecutor's comments during closing argument were proper comments on the evidence presented at trial.
{¶ 60} Appellant next contends that the prosecutor acted improperly by lying to the trial court during a sidebar conference when he represented there would be proof that appellant threw Gardner's personal property out of the apartment and slashed her car tires. However, the record reflects that the prosecutor simply stated that a later witness would testify that appellant admitted to some of these acts. That witness, Officer Magaw, did testify that appellant told him he threw stuff outside of the apartment because Gardner made him mad. More importantly, appellant could not have been prejudiced by this comment because it took place during a sidebar and the jury could not have heard the prosecutor's comment. State v. Armour (Dec. 19, 1991), Cuyahoga App. No. 59064. Appellant further contends that this same comment was made during a pre-trial hearing. Again, because the comment did not occur at his trial, it could not have deprived appellant of a fair trial.
{¶ 61} Appellant also contends that the prosecutor acted improperly by failing to disclose the existence of Officer Magaw's testimony before trial. However, Crim.R. 16(B) specifically states that "statements made by witnesses or prospective witnesses to state agents" are not discoverable. Crim.R. 16(B)(2); State v. Saxton, Marion App. No. 9-2000-88, 2002-Ohio-1024. Therefore, the prosecutor was under no obligation to provide appellant with Officer Magaw's statement and he did not act improperly by failing to provide appellant with this statement before trial.
{¶ 62} Appellant's pro se tenth assignment of error also contends that the prosecutor engaged in misconduct by failing to provide Captain Robinson's report. However, we have already determined that the prosecutor did not violate Brady because the report was presented to appellant's counsel at trial. Therefore, no misconduct occurred. Hanna, at ¶ 82.
{¶ 63} Lastly, appellant contends that the prosecutor acted improperly by testifying at trial. We disagree. The prosecutor did not testify. Specifically, appellant's counsel attempted to impeach Pfeifer with Pfeifer's earlier testimony during appellant's arraignment. The transcript of the arraignment indicates that Pfeifer stated that "there was no actual cause to the fire." During a sidebar, the prosecutor alleged that there was a mistake in the transcription and that Pfeifer actually said there was "no accidental cause" of the fire. The prosecutor went on to inform the court what he would do to show how an error could appear in an arraignment transcript by describing how busy arraignment court could be. Appellant contends that these comments were improper. Even assuming they were, the comments were made during a sidebar and outside the presence of the jury. Therefore, we fail to see how these comments deprived appellant of a fair trial. Armour, supra.
{¶ 64} Finding that appellant was not prejudiced by any alleged improper prosecutorial misconduct, his pro se tenth assignment of error is overruled.
{¶ 65} Appellant contends in his pro se eleventh assignment of error that the jury instructions deprived him of a fair trial. Appellant's trial counsel did not object to any of the jury instructions. Therefore, appellant has waived any errors in these jury instructions unless they rise to the level of plain error. Crim.R. 52(B); State v. Jackson (2001), 92 Ohio St.3d 436, 444, citing State v. Underwood (1983), 3 Ohio St.3d 12, syllabus; Columbus v. Andrews (Mar. 18, 1993), Franklin App. No. 92AP-1340. Erroneous jury instructions do not constitute plain error unless, but for the error, the outcome of the trial clearly would have been different. State v. Long (1978),53 Ohio St.2d 91, 97; State v. Canter, Franklin App. No. 01AP-531, 2002-Ohio-1347.
{¶ 66} Appellant first contends that the following jury instruction tells the jury to ignore a lying witness:
If you conclude that a witness has willfully lied as to a material fact, you may distrust all of that witness's testimony, or you would have the right to reject the witness's testimony unless from all of the evidence you believe the probability of truth favors the witness's testimony in other particulars.
{¶ 67} This instruction does not instruct the jury to ignore a lying witness. Rather, it allows the jury to accept or reject all or portions of a witness's testimony, even if the jury believes that witness lied. That is within the province of the jury. We cannot say that, but for this jury instruction, the outcome of appellant's trial clearly would have been different. We find no plain error in this jury instruction. See State v. Johnson (Dec. 18, 1991), Lorain App. No. 91CA004991.
{¶ 68} Second, appellant contends that a jury instruction dealing with expert testimony was erroneous. That instruction stated that, if the assumed facts underlying a hypothetical question from which an expert drew an opinion were not established, then the jury must determine the effect of that failure on the expert's testimony. However, no such hypothetical questions were asked of the one expert witness who testified in this case. This expert simply testified that the fire was intentionally set and that an accelerant was used. He was not asked to assume any facts to render this opinion. Therefore, even if this jury instruction was improper, the outcome of the trial would not clearly have been different because there were no hypothetical questions posed to Pfeifer from which he rendered his opinion.
{¶ 69} Appellant next contends that the trial court's instruction regarding the other acts evidence was improper. The trial court instructed the jury that "[e]vidence was admitted of another act which the defendant may have committed. You may not consider that evidence to determine whether the defendant committed any act alleged in the indictment. If you find from the other evidence that the defendant committed the acts charged in the indictment, then you may consider the evidence of the other act as bearing upon defendant's motive, intent, or lack of evidence." The trial court corrected the last portion of this instruction to state "lack of accident" in the jury instructions that were sent back to the jury during its deliberations.
{¶ 70} We cannot say that this instruction was improper. Rather, it is a correct statement of the law. As we have already decided, the other acts evidence was properly admitted into evidence. That evidence may not be used to prove an accused committed the acts he was charged with, as the trial court instructed the jury. However, it may be used for other purposes. Therefore, we cannot say this instruction was improper, let alone plain error.
{¶ 71} Appellant next contends that the trial court improperly instructed the jury as to the elements of aggravated arson. Appellant was charged with a violation of R.C. 2909.02(A)(2), which requires that the state prove that appellant knowingly caused physical harm to an occupied structure by means of fire. However, the trial court defined physical harm to property and not physical harm to an occupied structure, although the instructions did define an occupied structure. We cannot say that this rises to the level of plain error. Although physical harm to property is not an element of the crime of aggravated arson, the crime was properly defined by the trial court to require physical harm to an occupied structure. An occupied structure was then properly defined. In addition, it was never contested that a portion of Gardner's apartment, which is an occupied structure, was damaged. Therefore, we cannot say that the result of the trial would clearly have been different if the court had used the phrase "occupied structure" instead of "property" in the definition of physical harm.
{¶ 72} Appellant next contends that the trial court improperly instructed the jury on the elements of intimidation of a crime victim or witness. Because we have already found that this conviction was in error, this portion of appellant's pro se assignment of error is rendered moot. App.R. 12(A).
{¶ 73} Because none of the jury instructions rise to the level of plain error, we overrule appellant's pro se eleventh assignment of error.
{¶ 74} Appellant contends in his pro se twelfth assignment of error that he received ineffective assistance of counsel. In order to prevail on an ineffective assistance of counsel claim, appellant must meet the two-prong test enunciated in Strickland v. Washington (1984),466 U.S. 668; accord State v. Bradley (1989), 42 Ohio St.3d 136, certiorari denied (1990), 497 U.S. 1011. Initially, appellant must show that counsel's performance was deficient. To meet that requirement, appellant must show counsel's error was so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Appellant may prove counsel's conduct was deficient by identifying acts or omissions that were not the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. Id. at 690. In analyzing the first prong of Strickland, there is a strong presumption that defense counsel's conduct falls within a wide range of reasonable professional assistance. Id. at 689. Appellant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. Id., citing Michel v. Louisiana (1955), 350 U.S. 91,101.
{¶ 75} If appellant successfully proves that counsel's assistance was ineffective, the second prong of the Strickland test requires appellant to prove prejudice in order to prevail. Id. at 692. To meet that prong, appellant must show counsel's errors were so serious as to deprive him of a fair trial, a trial whose result is reliable. Id. at 687. Appellant would meet this standard with a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.
{¶ 76} Appellant first contends that his trial counsel was ineffective for failing to obtain the testimony of an independent fire investigator. We disagree. Although appellant contends that trial counsel did not obtain an independent fire investigator, counsel stated to the trial court at appellant's sentencing that potential expert witnesses were contacted but that their testimony would not have been favorable. Regardless, the failure to call an expert witness and instead rely on cross-examination of the state's expert witness does not constitute ineffective assistance of counsel. State v. Hartman (2001),93 Ohio St.3d 274, 299; State v. Rutter, Hocking App. No. 02CA17, 2003-Ohio-373, at ¶ 27. In fact, as in this case, trial counsel's decision not to seek expert testimony " `is unquestionably tactical because such an expert might uncover evidence that further inculpates the defendant.' " State v. Samatar, 152 Ohio App.3d 311, 2003-Ohio-1639, at ¶ 90, quoting State v. Glover, Clermont App. No. CA2001-12-102, 2002-Ohio-6392, at ¶ 95. " `Further, even if the wisdom of such an approach is debatable, "debatable trial tactics" do not constitute ineffective assistance of counsel.' " Id., quoting State v. Clayton (1980), 62 Ohio St.2d 45, 49. Trial counsel was not able to retain a favorable expert to testify and, instead, chose to rely on cross-examination of the state's expert witness. We cannot say that strategy was unreasonable.
{¶ 77} Appellant next contends that trial counsel should have requested a mistrial after Pfeifer testified that appellant had a criminal record. Specifically, Pfeifer was asked by appellant's counsel what charges appellant faced at trial. Pfeifer testified that he thought appellant faced the aggravated arson charge, as well as domestic violence and menacing charges. Appellant misinterprets Pfeifer's testimony. His testimony was not that he had a criminal record, but that he thought appellant faced other charges from this one incident. Moreover, trial counsel failed to object to this portion of Pfeifer's testimony. We cannot say that the outcome of this trial would clearly have been different but for the mention of these other charges Pfeifer thought appellant faced. Because any error in Pfeifer's testimony did not rise to the level of plain error, we cannot say that trial counsel was ineffective for failing to request a mistrial based on this testimony. See State v. Jones (1996), 115 Ohio App.3d 204, 208 (finding no ineffective assistance of counsel for failing to request mistrial where alleged error did not rise to the level of plain error).
{¶ 78} Appellant also contends that trial counsel was ineffective for failing to timely subpoena Deputy Felkner for trial. Even assuming that counsel acted unreasonably in failing to timely subpoena the deputy, appellant cannot show that he was prejudiced by counsel's failure. The deputy's testimony allegedly would have concerned the charge of intimidation appellant was facing. However, because we have already determined that the state's evidence of intimidation was insufficient to support his conviction, appellant cannot be prejudiced by Deputy Felkner's absence.
{¶ 79} Appellant next contends that trial counsel was ineffective for failing to prevent Barrow from testifying to the threat appellant allegedly made when such testimony is hearsay. We disagree. Hearsay is defined as a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Unless a valid exception applies, hearsay is inadmissible. Evid.R. 802. Appellant contends that trial counsel should have objected to hearsay testimony describing the alleged threats he made in his telephone conversation with Barrow. However, Evid.R. 801(D)(2)(a) provides that "[a] statement is not hearsay if: * * * (2) * * * The statement is offered against a party and is (a) his own statement, in either his individual or representative capacity[.]" To be admissible under this rule, a prior out-of-court statement must be: (1) offered against a party; and (2) the statement of the party against whom the statement is being offered. State v. Robb (Apr. 30, 1998), Franklin App. No. 95APA08-1003, citing Mastran v. Urichich (1988), 37 Ohio St.3d 44, 47. Appellant's statements to Barrow satisfies both of these requirements and was properly admitted. Trial counsel was therefore not ineffective for failing to object to such testimony. State v. Crum (Oct. 26, 1998), Stark App. No. 97-CA-0134.
{¶ 80} Appellant next contends that trial counsel was ineffective for failing to object to the trial court's jury instructions mentioned in appellant's pro se eleventh assignment of error. However, having found no reversible error in the trial court's jury instructions, we find no merit in appellant's contention that trial counsel's failure to object to those instructions constitutes ineffective assistance of counsel. State v. Rice (1995), 103 Ohio App.3d 388, 401; State v. Watkins, Franklin App. No. 01AP-1376, 2002-Ohio-5080, at ¶ 47; see, also, State v. Jackson (2001), 92 Ohio St.3d 436, 447.
{¶ 81} Appellant's final contention under this assignment of error is that counsel should have objected to comments in the prosecutor's closing argument. Specifically, appellant claims counsel should have objected to references to the other acts evidence describing the clothes scattered about the property and the slashed tires on Gardner's car. The failure to object is not a per se indicator of ineffective assistance of counsel because counsel may refuse to object for tactical reasons. State v. Gumm (1995), 73 Ohio St.3d 413, 428. As we have already noted, that evidence was properly admitted and the prosecution is entitled to make comments on evidence in their closing argument. Therefore, trial counsel was not ineffective for failing to object to these comments.
{¶ 82} Having found trial counsel was not ineffective in its representation of appellant, we overrule appellant's pro se twelfth assignment of error.
{¶ 83} The last two assignments of error discuss sentencing issues. Appellant's fourth assignment of error contends that the trial court erred in changing the date of his sentencing hearing without proper notice. Appellant's sentencing hearing was originally scheduled for December 20, 2001, but was moved up to December 18, 2001. Notice was apparently given to appellant's counsel of this change on Sunday, December 16, 2001. At his sentencing hearing, the trial court denied appellant's request for a continuance of the hearing. Appellant contends that the trial court violated his right to present mitigation evidence on his own behalf by denying his motion for a continuance. We disagree.
{¶ 84} The grant or denial of a continuance is a matter that is entrusted to the broad, sound discretion of the trial judge. State v. Unger (1981), 67 Ohio St.2d 65, syllabus; State v. Conway (Mar. 30, 1989), Franklin App. No. 88AP-798. An appellate court must not reverse the denial of a continuance unless there has been an abuse of discretion. Unger, supra, at 67. Whether a trial court has abused its discretion in denying a motion for a continuance depends upon the circumstances, " `particularly * * * the reasons presented to the trial judge at the time the request is denied.' " State v. Powell (1990),49 Ohio St.3d 255, 259, quoting Ungar v. Sarafite (1964), 376 U.S. 575,589.
{¶ 85} Appellant requested a continuance of his sentencing hearing so that he could present evidence that Gardner lied when she testified. A sentencing hearing is not a vehicle to re-litigate appellant's criminal convictions or to attempt to impeach a witness who testified at his trial. It is for the defendant to be sentenced. Additionally, it was appellant's own trial counsel that requested appellant's sentencing hearing be moved ahead to December 18, 2001. "A party cannot take advantage of an error he invited or induced." State v. Seiber (1990),56 Ohio St.3d 4, 17. Because appellant sought a continuance mainly to present evidence unrelated to sentencing, and because it was appellant's own trial counsel that requested the earlier sentencing hearing, the trial court did not abuse its discretion in denying appellant's request for a continuance. Appellant's fourth assignment of error is overruled.
{¶ 86} Appellant contends in his third assignment of error that his sentencing was improper. First, appellant contends that the trial court erroneously convicted him of a first-degree felony instead of a second-degree felony. Appellant was convicted of aggravated arson in violation of R.C. 2909.02(A)(2), a felony of the second degree. R.C.2909.02(B)(3). The trial court, at sentencing, indicated appellant was sentenced to a five-year term for a conviction of aggravated arson, a second-degree felony. However, the judgment entry sentencing appellant indicates that he was convicted of aggravated arson, a first-degree felony. We, therefore, sustain this portion of appellant's third assignment of error and remand this case to the trial court to correct this apparent clerical error.
{¶ 87} Next, appellant contends that the trial court's imposition of a maximum sentence for his intimidation conviction was improper and that the trial court failed to make the findings required by R.C.2929.14(E)(4) to impose consecutive sentences. Because we have found that appellant's intimidation conviction was not supported by sufficient evidence as a matter of law, these portions of appellant's third assignment of error are rendered moot. App.R. 12(A).
{¶ 88} Finally, appellant also filed a pro se objection to this direct appeal requesting the dismissal of the appeal because there was an incomplete record transmitted from the trial court. However, appellant has not set forth specifically what he claims is missing from the record that was submitted to this court and we have not found anything missing from the record that would be relevant to this appeal. For these reasons, we deny appellant's pro se objection to this appeal.
{¶ 89} In conclusion, appellant's second assignment of error is sustained and appellant's third assignment is sustained in part. Appellant's first, fourth, fifth and sixth assignments of error and appellant's pro se assignments of error one, two, three, four, five, six, seven, eight, ten, eleven and twelve are overruled. Our disposition of these assignments of error render appellant's third assignment of error in part and appellant's pro se ninth assignment of error moot. The judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part and this matter is remanded for proceedings consistent with this opinion.
Judgment affirmed in part, reversed in part and remanded.
[1] Cf. State v. Wagner (Dec. 23, 1999), Fairfield App. No. 99CA23 (noting that R.C. 2921.04[B] requires "some evidence of the underlying crime * * * to establish that [the victim] was, in fact, the victim in a criminal proceeding, and [defendant] was attempting to prevent her from further prosecution of the underlying case"); State v. Gooden, Cuyahoga App. No. 81320, 2003-Ohio-2864, at ¶ 27.