JOURNAL ENTRY and OPINION
{¶ 1} A jury found defendant Marvin Fisher guilty of two counts of aggravated arson. The court merged those counts for sentencing. In this appeal, he raises as a basis for reversal a number of claimed trial errors, and argues that the court erred by failing to inform him that he would be subject to post-release control upon the expiration of his prison term.
 {¶ 2} The state's evidence showed that a small fire had been intentionally started in an apartment rented by Fisher. Fisher's landlord testified that just two weeks prior to the fire, he informed Fisher that he needed to vacate the premises. The landlord said that he received complaints from neighbors about "people hanging around and stuff." Fisher removed most of his belongings, but on the day of the fire told the landlord that he had a "box or two" to remove.
 {¶ 3} On the day of the fire, one of the tenants said that he saw Fisher sitting on the front porch of the apartment building, drinking beer. About three hours later, the tenant heard smoke detectors sounding. He entered the hall of the apartment building and saw smoke coming from the open door to Fisher's apartment. The tenant entered the apartment and discovered a small fire on the carpet, about one square foot in both area and height. He stamped the fire and smothered it with a blanket. An arson investigator for the fire department confirmed that the fire had been intentionally set, and noted that the fire department recovered a bottle of fingernail polish remover and a lighter from the premises. The arson investigator said that the burn area on the carpet was consistent in shape with a liquid accelerant being poured on the carpet and spreading out.
 {¶ 4} After extinguishing the fire, the tenant exited the building with a companion to look for the person who started the fire. He went about 500 feet from the apartment building and saw a tire to Fisher's bicycle sticking out from some bushes. When he took a closer look, the tenant saw Fisher crouched down behind the bushes, holding a hammer in his hand Thinking that Fisher meant to strike him with the hammer, the tenant picked up Fisher's bicycle and threw it at him. When the tenant and his companion secured Fisher, they noticed that he was obviously intoxicated. A police officer who responded to the scene confirmed the tenant's observations of Fisher's intoxication.
 {¶ 5} Shortly after Fisher had been arrested, an inmate at the county jail informed the police that he had information proving Fisher's culpability in the arson. The inmate said that he, too, had been arrested on arson charges, and that as he and Fisher were being transported for arraignment, they discussed their cases. The inmate said that Fisher admitted to him that he committed the arson in a manner consistent with the evidence produced by the state. Notably, Fisher stated to the inmate that he set a cloth on fire and threw it into the room. He left the premises and hid in the back bushes waiting for the fire to start. Fisher said that he saw the tenant extinguish the fire and then go to the place where Fisher waited. The tenant grabbed Fisher's bicycle and accused him of setting the fire.
 I {¶ 6} The inmate who testified to Fisher's admissions signed a written statement. The state called the inmate as a witness, but when the inmate became recalcitrant and said that he could not verify the veracity of his statement, the court declared the inmate a hostile witness. The state then impeached the inmate with the written statement. When the jury retired to deliberate, the court permitted the jury to see the written statement. Fisher not only complains that the court erred by declaring the inmate to be a hostile witness, but erred by permitting the inmate's statement to be received as evidence by the jury and by failing to give a limiting instruction on the jury's use of the statement.
 A {¶ 7} Evid.R. 607 permits a party to attack the credibility of that party's witness by means of a prior inconsistent statement only upon a showing of surprise and affirmative damage. The question whether surprise and affirmative damage exist are factual issues left to the discretion of the trial court. Statev. Diehl (1981), 67 Ohio St.2d 389, 391. For purposes of the rule, a party demonstrates "surprise" when the witness' trial testimony is materially inconsistent with the prior statement and counsel did not have reason to believe that the witness would repudiate the prior statement. State v. Holmes (1987),30 Ohio St.3d 20, 23. The "affirmative damage" component of the rule is shown when the witness testifies at trial to facts which contradict, deny or otherwise harm the offering party's trial position. State v. Blair (1986), 34 Ohio App.3d 6, 9.
 {¶ 8} The inmate's written statement contained a specific account of the crime as told to him by Fisher, the salient facts of which were corroborated by other witnesses. The inmate correctly stated the location of Fisher's apartment, that Fisher lit the fire, and that after lighting the fire, Fisher hid out in bushes where he was found by the tenant. Finally, the inmate said that Fisher told him he had been drinking beer, although he said that he drank only one 40-ounce bottle of beer.
 {¶ 9} When called to the witness stand, the inmate stated that he did not want to testify. He then gave a series of evasive answers, for example saying that he could not recall the basis of the information he relayed to a police lieutenant when he reported his conversation with Fisher. When asked if he told the lieutenant that he would testify truthfully at trial with regard to the statement, the inmate replied, "well, not necessarily so." In further inquiry about his pretrial conversation with the lieutenant, the inmate said, "I said I don't have anything to tell about the situation. He came to me, told me what I was going to say, but I never agreed to — by me testifying or whatever." When asked to confirm the veracity of his written statement, the inmate said, "I don't know if it's true. I don't know. * * * I don't know if it's true or not. How did I get the information [contained in the written statement]? I'm not testifying as to that. I don't know." At that point, the court granted the state's request to have the inmate declared a hostile witness.
 {¶ 10} The issue of surprise under Evid.R. 607 is a factual issue, and we defer to the court's superior position to make the factual determination that the state had been surprised. Certainly, the inmate's trial testimony that he could not verify the truth of his written statement took the state by surprise, as it would have served no purpose for the state to put a jailhouse snitch on the stand if it thought his testimony would be otherwise than his written statement. The inmate's trial testimony amounted to a material inconsistency with his written statement.
 {¶ 11} Fisher's argument that the state should have expected the inmate to recant his testimony is flawed. Evid.R. 607 requires a subjective showing of surprise; that is, what the proponent of the testimony believed, not what a third person might have thought. Fisher's argument asks us to review the Evid.R. 607 issue in an objective manner, and that is not required by the rule. To be sure, there may be situations in which a proponent's claim of subjective surprise might be unbelievable under given circumstances and the court could resolve the factual issue of surprise against the proponent, but those circumstances are not present here.
 {¶ 12} We also find that the court did not err by concluding that the state showed affirmative damage from the inmate's testimony. The state had circumstantial evidence implicating Fisher in the arson, but it had no direct evidence. Circumstantial evidence has the same force and effect as direct evidence. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph one of the syllabus. However, the state could justifiably wish to present evidence of Fisher's admission to the arson in order to buttress the circumstantial evidence. When the inmate began to distance himself from the statement, the state's case was affirmatively damaged since it removed any direct link between Fisher and the crime. And we think there can be no doubt that the inmate's statements contradicted the state's position in a manner that showed affirmative damage. The state told the jury in opening argument that it would present evidence of Fisher's jailhouse confession. Once the inmate began to question the truth of his own statement, the state was placed in the uncomfortable position of having to demonstrate to the jury why it could not produce the evidence it promised. This constituted affirmative damage under the rule.
 B {¶ 13} When the jury retired to deliberate, the court permitted the inmate's written statement to be included among the exhibits sent into the jury room. Fisher argues that the court erred both by permitting the jury to see the statement and by not giving the jury an instruction on how it should use the statement.
 1 {¶ 14} Evid.R. 613(B) permits admission of extrinsic evidence of a prior inconsistent statement if the witness is afforded a prior opportunity to explain or deny the statement the opposite party is afforded the opportunity to interrogate the witness on the statement. The court's ruling on Evid.R. 613(B) questions, like other evidentiary rulings, are reviewed for an abuse of discretion. State v. Sage (1987), 31 Ohio St.3d 173. As we discussed in subsection I(A) of this opinion, the state demonstrated that the inmate testified inconsistently with his written statement. Defense counsel had the opportunity to cross-examine the inmate on the statement. Hence, the prerequisites of Evid.R. 613(B) were established and we see no basis for finding that the court abused its discretion by admitting the inmate's prior inconsistent statement into evidence.
 2 {¶ 15} Fisher also complains that even if the court did not err by permitting the inmate's written statement into evidence, it erred by failing to give the jury a limiting instruction that it could only use the statement for purposes of impeachment, not for substantive evidence of guilt.
 {¶ 16} While Fisher objected to the admission of the inmate's statement, he did not ask the court for a limiting instruction once the court overruled his objection to the admission of the statement. Crim.R. 30 does not allow a party to assign as error the giving or failure to give instructions unless the party objected to them before the jury began deliberating. Fisher did not request a cautionary instruction — he only asked the court to redact parts of the statement that showed that the inmate heard Fisher's admissions while in prison (a request that the court granted). Fisher's failure to request a cautionary instruction is fatal to this part of his argument.
 II {¶ 17} Fisher next argues that the state failed to produce sufficient evidence for conviction and that verdicts were against the manifest weight of the evidence.
 A {¶ 18} The United States Constitution prohibits the criminal conviction of any person except upon proof of guilt beyond a reasonable doubt. In re Winship (1970), 397 U.S. 358. A claim of insufficient evidence invokes due process of the law and raises the question of whether the evidence is legally sufficient to support the jury verdict as a matter of law. State v.Thompkins (1997), 78 Ohio St.3d 380, 386. Our inquiry for a claim of insufficient evidence is whether, after viewing the evidence in a light most favorable to the state, any rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt. State v. Jenks
(1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 19} The state charged Fisher with aggravated arson under R.C. 2909.02(A)(2), which states that no person, by means of fire, shall knowingly cause physical harm to any occupied structure. The state presented evidence that a fire occurred in Fisher's apartment and that other tenants were present in the apartment building at the time of the fire. Reasonable minds could have found these elements of the offense proven beyond a reasonable doubt.
 {¶ 20} The statute also requires that the offender knowingly set the fire. The arson investigator stated his opinion that the fire had been intentionally set, as he noted that the type of carpet laid in the apartment contained a fire-retardant material that would not have caught fire by accident. The arson investigator testified that "you can throw a hundred matches on carpeting, and it's not going to burn," meaning that a carpet will only catch fire if the fire is intentionally set. Moreover, the arson investigator testified that he found an empty bottle of fingernail polish near the charred site of the fire, and discovered the burn pattern left on the carpet had spread in a manner consistent with a liquid accelerant being poured on the carpet. Reasonable minds could have found the state proved that Fisher committed the crime with the requisite mental intent by virtue of the presence of a liquid accelerant.
 {¶ 21} Finally, the state needed to prove that Fisher caused physical harm to the structure. We note that there is no statutory definition of physical harm to a "structure." R.C.2901.01(A)(4) defines physical harm to "property" as any tangible damage to property which, in any degree, results in loss to its value. Even though the building is a "structure" for purposes of the aggravated arson statute, it is also the property of its owner. We take this opportunity to clarify statements made inState v. Jackson, Franklin App. No. 02AP-867, 2003-Ohio-6183, in which the Tenth District Court of Appeals stated that a trial court committed error (but not plain error) in an aggravated arson case charged under R.C. 2909.02(A)(2) by defining physical harm to property and not physical harm to an occupied structure. The Tenth District stated:
 {¶ 22} "Appellant next contends that the trial court improperly instructed the jury as to the elements of aggravated arson. Appellant was charged with a violation of R.C.2909.02(A)(2), which requires that the state prove that appellant knowingly caused physical harm to an occupied structure by means of fire. However, the trial court defined physical harm to property and not physical harm to an occupied structure, although the instructions did define an occupied structure. We cannot say that this rises to the level of plain error. Although physical harm to property is not an element of the crime of aggravated arson, the crime was properly defined by the trial court to require physical harm to an occupied structure. An occupied structure was then properly defined. In addition, it was never contested that a portion of Gardner's apartment, which is an occupied structure, was damaged. Therefore, we cannot say that the result of the trial would clearly have been different if the court had used the phrase `occupied structure' instead of `property' in the definition of physical harm."
 {¶ 23} If the Tenth District meant to state that it was improper for the court to define physical harm to a "structure" by using the definition of physical harm to "property," that conclusion must be erroneous. The Revised Code does not contain a definition of physical harm to a "structure," so the definition of physical harm to "property" would be the logical means of informing the jury what degree of harm was necessary to satisfy the elements of aggravated arson. And as the Tenth District pointed out, the trial court in Jackson had instructed the jury on what constituted an "occupied structure," so the jury rather obviously would have known that the definition of physical harm to "property" necessarily was meant to apply to the "structure." While we recognize that the Ohio Jury Instructions do not carry the force of law, it is worth noting that they use the definition of physical harm to property as part of the instructions for aggravated arson under R.C. 2909.02.
 {¶ 24} Based on the statutory definition of physical harm to property, we believe reasonable minds could have found beyond a reasonable doubt that the fire caused a loss of value to the burned carpet. The landlord testified that he had to replace the damaged portion of the carpet, and while this damage was minimal, physical harm is defined as any damage, "in any degree" which results in a loss to property. The evidence made this element of the offense obvious.
 {¶ 25} Because the state presented evidence going to all essential elements of the charge of aggravated arson, the verdict was supported by sufficient evidence.
 B {¶ 26} When the court of appeals is presented with an argument that a factual finding is against the manifest weight of the evidence, it must consider the entire record and determine whether the trier of fact lost its way when determining the facts. Fisher's argument does nothing more than state that the verdicts are against the manifest weight of the evidence for the same reasons why they were not supported by sufficient evidence. The appellate concepts of manifest weight of the evidence and insufficient evidence are "both quantitatively and qualitatively different." State v. Thompkins, 78 Ohio St.3d 380,1997-Ohio-52, paragraph two of the syllabus. Fisher's lack of a separate argument relating to the weight of the evidence constitutes a failure to separately argue an assignment of error, and thus we disregard it pursuant to App.R. 12(A)(2).
 III {¶ 27} The tenant had a drug indictment pending against him at the time of his trial testimony. The state represented to the court that it had not made any deals with the tenant in exchange for his testimony. Nevertheless, Fisher asked the court for permission to inquire into his motives for testifying, particularly whether the tenant believed his testimony might help his pending drug case. The court conducted a voir dire of the tenant to determine whether there might be some basis for concluding that the tenant's desire for favorable treatment in his pending case might affect his credibility. At the conclusion of the voir dire, the court ruled that Fisher could indicate to the jury only that there was a pending charge against the tenant and that he could inquire into what his motivation for testifying might be. Despite this ruling, Fisher's counsel did not cross-examine the tenant on the pending drug charge. Fisher now argues that counsel performed ineffectively by failing to raise this point on cross-examination.
 {¶ 28} To prevail on a claim of ineffective assistance of counsel, an appellant must show that counsel's performance was deficient and that the deficient performance prejudiced the defense so as to deprive him of a fair trial. Strickland v.Washington (1984), 466 U.S. 668, 687. To warrant reversal, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."State v. Bradley (1989), 42 Ohio St.3d 136, paragraph three of the syllabus, citing Strickland, 466 U.S. at 694.
 {¶ 29} We do not find that counsel acted ineffectively by failing to impeach the tenant because there is nothing in the record to show that the impeachment would have been beneficial to the defense. During the voir dire, the tenant specifically stated that he had no conversations with the prosecution about favorable treatment in the pending case in exchange for his testimony against Fisher and admitted that he was annoyed that the state would not agree to favorable treatment. The tenant also stated that he had not discussed the possibility of favorable treatment with his attorney, and that while his attorney was aware that he would be testifying, the tenant's attorney was not present to hear his testimony against Fisher. Nothing in this voir dire suggests that Fisher would have obtained any material benefit from impeaching the tenant on the pending drug charge. To cross-examine the tenant on his motivations for testifying could simply have reinforced the idea that he was testifying without the promise of favorable treatment, a fact that would not aid the defense. Counsel was also likely aware that the tenant's version of the facts did not suggest opportunism, since there was corroborated evidence to show that he acted to extinguish the fire and apprehend Fisher without any apparent thought to favorable treatment in an unrelated criminal matter. In other words, the tenant's involvement in the case arose independently of any concerns about pending cases. That being the case, we find it difficult to conclude that counsel rendered ineffective assistance.
 IV {¶ 30} Fisher also complains that counsel performed ineffectively by failing to object to the state's impermissible use of an out-of-court statement and by failing to request a limiting instruction on the jury's use of the statement. Our previous discussion on the use of the statement renders moot any argument about counsel's failure to object to its use. We did note, however, that counsel failed to request a limiting instruction on the jury's use of the statement, so that issue remains.
 {¶ 31} We can agree without conceding error on the point that some attorneys might have sought a limiting instruction of the kind raised by Fisher. It may well have been advisable for Fisher to ask the court to inform the jury that the inmate's written statement could not be used as substantive evidence of the arson, but only as evidence going to the inmate's credibility.
 {¶ 32} Nevertheless, we cannot say that even if we found the failure to request a limiting instruction amounted to deficient performance, the deficient performance prejudiced the defense. By denying his ability to verify the truth of his statement, the inmate had effectively ruined his credibility. It seems doubtful to us that the jury would have placed significant weight on the substance of the inmate's testimony, whether it corroborated the state's evidence or not; hence, a limiting instruction would have merely restated the obvious to the jury.
 {¶ 33} At all events, the failure to request a limiting instruction did not affect the outcome of trial. It is true that Fisher's confession was the only independently important aspect of the inmate's statement, but the evidence pointed to Fisher even without his confession. Fisher had a beef with the landlord, he was intoxicated at the time, the fire started in his apartment, and he was caught hiding in bushes not far from the apartment in a position that would allow him to see the fire. Motive, opportunity and flight are a powerful combination that points to Fisher's guilt. We can confidently say that even if the court had given the instruction as now sought by Fisher, the outcome of trial would not have been different.
 V {¶ 34} For his final argument, Fisher complains that the court erred by failing to advise him orally of the terms of post-release control at sentencing. The court's sentencing entry did order post-release control for the maximum period allowed by law.
 {¶ 35} In Woods v. Telb, 89 Ohio St.3d 504, 2000-Ohio-171, the second paragraph of the syllabus states, "pursuant to R.C.2967.28(B) and (C), a trial court must inform the defendant at sentencing or at the time of a plea hearing that post-release control is part of the defendant's sentence." R.C.2929.19(B)(3)(e) says that if a period of post-release control is imposed following the offender's release from prison, the court must, at the sentencing hearing, notify the offender of the consequences of a violation of that post-release control.
 {¶ 36} The record shows that the court did not advise Fisher about post-release control at the time of sentencing, although it did mention post-release control in its sentencing entry. UnderWoods, this was erroneous.
 {¶ 37} It remains to be determined what the disposition of the post-release control is in light of the error. We are aware that there is a difference of opinion, even within this district, on whether an erroneous imposition of post-release should be remanded for correction or whether post-release controls are forever foreclosed. See State v. Finger, Cuyahoga App. No. 80691, 2003-Ohio-402, discretionary appeal allowed99 Ohio St.3d 1470, 2003-Ohio-3801. The weight of authority within this district, Finger notwithstanding, is that errors in the imposition of post-release controls be remanded for resentencing. See State v. Jordan, Cuyahoga App. No. 80675, 2002-Ohio-4587, ¶ 15. For what it's worth, we believe that because post-release control is governed by statute under R.C. 2967.28(B) and (C), the imposition of that part of a sentence that did not comply with the statutory requirements would be void. In State v. Beasley
(1984), 14 Ohio St.3d 74, 75, the Ohio Supreme Court stated, "Any attempt by a court to disregard statutory requirements when imposing a sentence renders the attempted sentence a nullity or void."
 {¶ 38} And it must be noted that post-release control is not itself a punishment, but a condition of parole, the violation of which is subject to punishment. See State v. Martello,97 Ohio St.3d 398, 2002-Ohio-6661, certiorari denied (2003), Martello v.Ohio, 123 S.Ct. 2087. Therefore we see no constitutional impediment to a remand for resentencing in the event a court fails to advise the offender orally that post-release controls will be imposed. We therefore order that this matter be remanded for the sole purpose of having the court orally inform Fisher of the post-release control imposed.
 {¶ 39} Judgment affirmed and remanded for resentencing.
 {¶ 40} It is ordered that appellee recover of appellant its costs herein taxed.
 {¶ 41} The court finds there were reasonable grounds for this appeal.
 {¶ 42} It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Dyke, J., Concurs.
 Gallagher, J., Concurs with the majority on assignments ofError Three, Four, Five, Six and Seven and Concurs in Judgmentonly on Assignments of Error One and Two. (see separateconcurring opinion.)