JOURNAL ENTRY and OPINION
{¶ 1} Appellant, Jamillah Hunter ("Hunter"), appeals her conviction of gross sexual imposition, her 15-month prison sentence, and her classification as a sexually oriented offender. For the following reasons, we affirm Hunter's conviction and classification as a sexually oriented offender, but we remand Hunter's sentence to the trial court to advise Hunter appropriately of all terms of post-release control.
 {¶ 2} Hunter was indicted on two counts of rape and one count of gross sexual imposition in connection with allegations of rape made by Andrea Luck ("Luck"), one of Hunter's roommates at the Northeast Prerelease Center, where the two women were serving time for violations of their probation. Hunter and Luck also shared their room with two other roommates, Andre McKinney ("McKinney") and Laura Bollington ("Bollington").
 {¶ 3} Luck testified that she had finished her job as a porter on New Year's Eve in 2002 and returned to her room to go to bed. Just like every night, she had taken her prescribed medication. She changed into her sports bra and white robe and climbed into her bed, which was the bottom bunk of the bed she shared with Bollington. Luck's medication caused her to be very sleepy, to the point where she could not fight off sleep. Luck woke up the next morning and noticed that her robe was untied. She went to tie her robe and noticed red marks on the tie of her robe. She then noticed red writing on her breasts, sports bra, and stomach, and in her vaginal area, the word "snitch" was plainly written. Luck also testified that she had an "after-sex feel" and took a shower to scrub off the marks. Out of fear that she would be docked days if she complained, Luck did not tell anyone immediately about the red writings. After she learned from others what happened, she informed the correction officers that there was trouble in her room and an investigation began.
 {¶ 4} McKinney testified that she was present in her room on New Year's Eve when Luck went to bed. McKinney stated that it was common knowledge that Luck was on medication that made her sleep soundly. After Luck went to bed, Bollington and Hunter were goofing off, playing truth or dare, and pulled the sheet off of Luck to expose her body. Bollington and Hunter laughed and made fun of Luck because she was only wearing a sports bra and she was naked from the waist down. Other inmates came into the room to look at Luck. When it was time for the correction officer to make his rounds and count the inmates, Hunter covered Luck back up with the sheet. However, once the count was finished, McKinney testified that Hunter took the sheet off of Luck again, asked Bollington for her red marker, and began writing on Luck's breasts, stomach, and pelvic area with the red marker. McKinney also testified that Hunter placed the red marker and her fingers into Luck's vagina. When first questioned about the incident, McKinney was not forthcoming with what she observed — in fact, she denied what happened. However, McKinney later gave written statements to the police, which were consistent with her testimony at trial.
 {¶ 5} The state also presented the testimony of Tonia Athens ("Athens"), an inmate residing in an adjacent room to Luck, Hunter, Bollington, and McKinney. Athens testified that on New Year's Eve, she heard Hunter, Bollington, and another inmate known as "Thompson," play truth or dare. Hunter smacked Luck while she was sleeping and stated that Luck was not awake. Hunter then asked Bollington for a red magic marker and Hunter walked into Athens' room with the marker. Athens remained in her room, but heard Hunter talk about how Luck shaved her private parts and heard others tell Hunter she was sick. Athens also overheard Hunter say that she was going to leave Luck exposed for the correction officer to see, but found out that the others covered Luck back up with her sheet. Another inmate, Elaine Presser ("Presser"), testified that she went into Luck's room right before the round count, saw Luck, and thought Luck looked flush on the face and belly.
 {¶ 6} The correction officer that made the rounds on New Year's Eve testified that he did not notice anything out of the ordinary nor were any of the inmates missing. He stated that the inmates are not allowed to visit others' rooms after 9:00 p.m., but admitted that many violate the rule. With respect to the investigation that was conducted, Trooper Thomas Esenwein ("Esenwein") interviewed Luck, as well as Luck's roommates and fellow inmates and received many written statements. Because Luck threw away her sports bra once she was released from Northeast Prerelease Center and scrubbed her body of the red markings, Esenwein testified that there was no physical evidence.
 {¶ 7} The jury found Hunter not guilty of the two counts of rape, but guilty of gross sexual imposition. The trial court then sentenced Hunter to 15 months in prison, to run consecutive to any prison term she was currently serving, and classified Hunter as a sexually oriented offender. Hunter now appeals.
 I. {¶ 8} For her first assignment of error, Hunter contends that the trial court erred when it denied her Crim.R. 29 motion for judgment of acquittal as to the charge of gross sexual imposition. However, Hunter's contention is without merit.
 {¶ 9} Crim.R. 29(A) provides in full:
 {¶ 10} "(A) Motion for judgment of acquittal. The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case."
 {¶ 11} When reviewing the record for sufficiency, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991),61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus;Jackson v. Virginia (1979), 443 U.S. 307, 319, 99 S.Ct. 2781,61 L.Ed.2d 560.
 {¶ 12} Here, the crime for which Hunter was found guilty, gross sexual imposition, is provided in pertinent part pursuant to R.C. 2907.05, as follows:
 {¶ 13} "(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:
 {¶ 14} "* * *
 {¶ 15} "(3) The offender knows that the judgment or control of the other person or of one of the other persons is substantially impaired as a result of the influence of any drug or intoxicant administered to the other person with the other person's consent for the purpose of any kind of medical or dental examination, treatment, or surgery."
 {¶ 16} Sexual contact has been defined as:
 {¶ 17} "* * * any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C.2907.01(B).
 {¶ 18} Here, there was evidence that Hunter touched Luck's breasts, genitals, and pubic region when she wrote on Luck with the red magic marker. Although Hunter argues that there was no evidence that Hunter touched Luck for the purpose of "sexually arousing or gratifying" either her or Luck, "sexual contact" does not require proof of actual arousal or gratification. State v.Edwards, Cuyahoga App. No. 81351, 2003-Ohio-998, ¶ 24, citingState v. Maybury (Aug. 11, 1994), Cuyahoga App. No. 65831. Instead, the trier of fact is permitted to infer from the evidence presented at trial "whether the purpose of the defendant was sexual arousal or gratification by his contact with those areas of the body described in R.C. 2907.01." State v. Cobb
(1991), 81 Ohio App.3d 179, 185, 610 N.E.2d 1009. The trier of fact may consider "the type, nature and circumstances of the contact, along with the personality of the defendant" and infer from those facts "what the defendant's motivation was in making the physical contact with the victim." Id.
 {¶ 19} As testified by McKinney, Hunter wrote on Luck's breasts and pubic region and then used the red magic marker and her fingers to penetrate Luck's vagina. Because there was no evidence that Hunter was writing on Luck's breasts and pubic region or was touching the victim's vagina by accident or for any legitimate purpose, and viewing the evidence in the light most favorable to the state, a rational jury could conclude that Hunter committed the essential elements of gross sexual imposition. Thus, the trial court did not err when it denied Hunter's Crim.R. 29 motion for acquittal and Hunter's first assignment of error is overruled.
 II. {¶ 20} Hunter argues in her second assignment of error that the trial court erred when it imposed a 15-month prison sentence to run consecutive to any time she was currently serving. Upon review of the record, Hunter's argument is without merit.
 {¶ 21} R.C. 2929.14(E)(4) provides in full:
 {¶ 22} "If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 {¶ 23} "(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 {¶ 24} "(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
 {¶ 25} "(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."
 {¶ 26} Here, Hunter committed the offense of gross sexual imposition while she was serving time for violation of her probation. See R.C. 2929.14(E)(4)(a). The trial court also found that Hunter's previous convictions of felonious assault, aggravated arson, grand theft, and receiving stolen property, coupled with her inability to benefit from probation and long periods of incarceration, demonstrated the need for a consecutive sentence to protect the public from future crime. See R.C.2929.14(E)(4)(c). The trial court also found that Hunter was not amenable to community control sanctions, as Luck suffered serious emotional harm, Hunter lacked remorse, and Hunter had a significant criminal history. See R.C. 2929.13(B)(1) and (2). Because the trial court complied with the statutory requirements for imposing a consecutive sentence, Hunter's second assignment or error is overruled.
 III. {¶ 27} For her third assignment of error, Hunter argues that the trial court failed to advise her of post-release control at sentencing and, as a result, the term of post-release control provided in the journal entry must be vacated. Although we find Hunter's argument that the trial court failed to appropriately advise her of post-release control at the time of sentencing to be well-taken, we simply remand this matter to the trial court for re-sentencing for the purposes of advising Hunter of postrelease control.
 {¶ 28} In Woods v. Telb, 89 Ohio St.3d 504, 2000-Ohio-171,733 N.E.2d 1103, the second paragraph of the syllabus states, "pursuant to R.C. 2967.28(B) and (C), a trial court must inform the defendant at sentencing or at the time of a plea hearing that post-release control is part of the defendant's sentence." R.C.2929.19(B)(3)(e) provides that if a period of post-release control is imposed following the offender's release from prison, the court must, at the sentencing hearing, notify the offender of the consequences of a violation of that post-release control. Absent from the record here is the trial court's advisement to Hunter about post-release control at the time of sentencing, although it did mention post-release control in its sentencing journal entry. Under Woods, this was erroneous.
 {¶ 29} Although it remains to be determined what the disposition of the post-release control is in light of the error, the weight of authority within this district "is that errors in the imposition of post-release controls be remanded for resentencing." State v. Fisher, Cuyahoga App. No. 83098, 2004-Ohio-3123, ¶ 37; State v. Jordan, Cuyahoga App. No. 80675, 2002-Ohio-4587, ¶ 15; cf. State v. Finger, Cuyahoga App. No. 80691, 2003-Ohio-402, discretionary appeal allowed99 Ohio St.3d 1470, 2003-Ohio-3801, 791 N.E.2d 985 (holding that the post-release control term is vacated). Because post-release control is governed by statute under R.C. 2967.28(B) and (C), the imposition of that part of a sentence that did not comply with the statutory requirements would be void. Thus, we order that this matter be remanded for the sole purpose of having the court orally inform Hunter of the post-release control imposed.
 IV. {¶ 30} Finally, Hunter asserts in her fourth assignment of error that the trial court erred when it classified Hunter as a sexually oriented offender because, as Hunter argues, there was insufficient evidence to find her guilty of gross sexual imposition. However, this court, in affirming Hunter's conviction for gross sexual imposition, finds Hunter's argument to be without merit.
 {¶ 31} Gross sexual imposition is included in the definition of a "sexually oriented offense" under R.C. 2950.01(D)(1)(a). A sexually oriented offender is one who has committed a sexually oriented offense. Because Hunter was found guilty of gross sexual imposition, a sexually oriented offense, she was properly classified as a sexually oriented offender. Thus, the trial court did not err and Hunter's fourth assignment of error is overruled.
Judgment affirmed and remanded for resentencing.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Gallagher, J., and Rocco, J., concur.