DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from the judgment of the Wood County Court of Common Pleas which, following a trial to the court, found appellant, William Miller, guilty of attempted intimidation of a witness in a criminal case, a felony of the fourth degree, in violation of R.C. 2923.02
and R.C. 2921.04(B), and sentenced him to seventeen months imprisonment. For the reasons that follow, we affirm the decision of the trial court.
{¶ 2} On appeal, appellant raises the following assignments of error:
{¶ 3} "Assignment of Error No. 1:
{¶ 4} "The evidence presented at trial was insufficient, as a matter of law, to sustain a guilty verdict as to count one, attempted intimidation of a crime witness, in violation of R.C. § 2921.04(B).
{¶ 5} "Assignment of Error No. 2:
{¶ 6} "The appellant's conviction for attempted intimidation of a crime witness, in violation of R.C. § 2921.04(B), was against the manifest weight of the evidence."
{¶ 7} Sufficiency of the evidence and manifest weight of the evidence are quantitatively and qualitatively different legal concepts. State v.Thompkins (1997), 78 Ohio St.3d 380, 386. "Sufficiency" applies to a question of law as to whether the evidence is legally adequate to support a jury verdict as to all elements of a crime. Id. In making this determination, an appellate court must determine whether, "after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
{¶ 8} Under a manifest weight standard, an appellate court sits as a "thirteenth juror" and may disagree with the fact finder's resolution of the conflicting testimony. Thompkins at 387. The appellate court,
{¶ 9} "`reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" Id., quoting State v. Martin (1983), 20 Ohio App.3d 172,175.
{¶ 10} Regarding attempt, R.C. 2923.02(A) states that "[n]o person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense."
{¶ 11} R.C. 2921.04, Intimidation of attorney, victim or witness in criminal case, states:
{¶ 12} "(B) No person, knowingly and by force or by unlawful threat of harm to any person or property, shall attempt to influence, intimidate, or hinder the victim of a crime in the filing or prosecution of criminal charges or an attorney or witness involved in a criminal action or proceeding in the discharge of the duties of the attorney or witness."
{¶ 13} In this case, the state established that appellant had been housed in the same unit with Isreal Flores, in the Wood County Justice Center, in early December 2003. On December 7, 2003, a phone conversation initiated by Flores, while in jail, to appellant, was recorded and submitted into evidence at appellant's August 2, 2004, intimidation trial. In the phone conversation, Flores explained to appellant that there would be a hearing the following day, on December 8, 2003, in the Wood County Court of Common Pleas, and told appellant how to get there. The December 8th hearing was on a motion to suppress filed by Flores, who had been charged with drug possession and trafficking.
{¶ 14} After determining the time and location of the hearing, appellant discussed how to get money to Flores in jail and mentioned that it could not come directly from appellant. Appellant then expressed a concern that no names would come out during the hearing. Flores, however, assured him that the name of the informant would have to come out, otherwise the state could only get him on "possession." Flores stated, "They are going to mention his name." Appellant responded, "That's what we need." Appellant then admonished Flores to "act innocent" and to keep matters between the two of them and to not tell anyone else in jail. Flores stated, "I appreciate the help," and appellant responded, "There is no problem. We're working on it." A woman then got on appellant's phone and Flores expressed to her that he was "doing the right thing for the right people." Thereafter, appellant got back on the phone and told Flores that there would be a "little meeting" held after the hearing and that Flores should call him back.
{¶ 15} On the day of Flores' suppression hearing, December 8, 2003, two individuals were present in the audience at the courthouse. They were observed taking notes during the testimony. Appellant was later identified as one of the individuals. The identity of the confidential informant in Flores' case was disclosed during this hearing.
{¶ 16} A second taped phone conversation, from December 9, 2003, between Flores and appellant, was entered into evidence. Appellant assured Flores that "[w]e're going to take care of business." Appellant again asked Flores if he had told anyone who was in court on the day of the hearing because it would "blow the cover." Flores assured appellant that he told officers that he did not know who was present in court. Appellant told Flores that "we sent you out some money today" under the name "Maria," and that Flores should put her on his "list" if the money order did not get through to him in jail.
{¶ 17} Appellant and Flores then briefly discussed what had been disclosed at the hearing. They commented that "the guy" had been doing it for a long time, every time he got in trouble, since 1993. Appellant stated that "we" played the tape loud and clear on the evening of December 8th, that "they" heard what they were "all" looking for, and that a lot of weight was taken off of a lot of people's shoulders. Flores commented that "he" had cost him four years and that he could not believe what had been disclosed. Flores stated that "something's gotta be done." Appellant assured him, "It will be," but they had to wait for the right time. Appellant then expressed to Flores that he "did good" and that "we" had a long talk about it "last night." Appellant told Flores he knew that Flores was doing two extra years by just getting a name out, but that wherever he was imprisoned, there would be "boys" there to meet him and that he would be "welcomed with open arms." Flores told appellant that the state had wanted him to turn state's evidence, to which appellant replied, "You ain't gonna have a life if you do that, Dude."
{¶ 18} A search warrant was executed for appellant's home on December 23, 2003. Officers found two small tape recorders and a copy Agent Mike Ackley's officer notes, regarding information the confidential informant had provided Agent Ackley throughout his investigation. Ackley testified that he knew nothing of appellant from his investigation and that the notes did not mention appellant. The notes, however, did mention other information the confidential informant had provide about "Knuckles" and "Big Bob" dealing drugs for the Iron Coffins in Northwest Ohio and Southeast Michigan, and that Ted Dean had a stolen tractor at his residence. Ackley further testified that after the confidential informant was notified that the officer notes had gotten out, the informant "appeared to be afraid and did not want to do anything more."
{¶ 19} On appeal, appellant argues that, although Agent Ackley opined that the statement, "Something's gotta be done," was a threat, Ackley admitted that, in fact, he did not know what that statement meant. As such, appellant argues that there was no evidence that an "unlawful threat of harm" was made. Assuming arguendo that an unlawful threat of harm was established, appellant argues that the evidence was insufficient to establish that the alleged threat was made in an attempt "to influence, intimidate, or hinder * * * [a] witness involved in a criminal action or proceeding in the discharge of the duties of the * * * witness."
{¶ 20} Relying on State v. Jackson, 10th Dist. No. 02AP-867, 2003-Ohio-6183, appellant argues that "[t]here must be some evidence of a nexus between appellant's threats and his desire to intimidate or harass [the witness] so that he would refrain from cooperating with the prosecution in subsequent criminal proceedings against the appellant." InJackson, the appellant was convicted of intimidation of a crime witness. Jackson had stated in a phone conversation, shortly after being incarcerated for arson, "tell Shelia I'm going to kill her when I get out of here" and ended the conversation by warning, "I'm going to make her life a living hell when I get out of here." The court held that the evidence was insufficient because there was no evidence that appellant made those threats to discourage the witness from filing charges or from testifying at a later criminal proceeding. Id. at ¶ 54. In particular, the court noted that rather than intimidating the witness, the witness "testified that she thought appellant may simply have been expressing his frustration at being in jail."
{¶ 21} We, however, find Jackson to be distinguishable from this case. In Jackson, the defendant was convicted of intimidation of a witness; whereas, in this case, appellant was convicted merely of attempt to intimidate a witness. Moreover, even the witness in Jackson did not perceive his threats as being for the purpose of intimidation; rather, she thought he was just frustrated at being in jail. Whereas, in this case, once the confidential informant knew the information had gotten out regarding his identity and the information he had supplied Agent Ackley, he was "afraid and did not want to do anything more."
{¶ 22} Moreover, we find that the evidence in this case was sufficient, when viewed in a light most favorable to the prosecution, to establish the elements of attempt to intimidate a witness. Appellant gathered information regarding the confidential informant's identity even though the informant had no connection to appellant. And, although appellant had no connection to the informant, appellant was nevertheless concerned that no one be told that appellant was there to find out the informant's identity or it would "blow the cover." Additionally, appellant shared the informant's identity with others and, after Flores and appellant had discussed how long the informant had been providing information and that the informant had cost Flores four years in jail, appellant assured Flores that "something" would be done about the informant when the time was right. Based on all the evidence presented, we find that the state presented sufficient evidence upon which any rational trier of fact could have relied in finding the essential elements of attempt to intimidate a witness beyond a reasonable doubt. Appellant's first assignment of error is therefore found not well-taken.
{¶ 23} Additionally, we find, after reviewing the entire transcript of proceedings and considering the credibility of the witnesses, that the trier of fact did not "lose its way" and thereby create such a manifest miscarriage of justice that appellant's conviction should be reversed as being against the manifest weight of the evidence. Appellant's second assignment of error is therefore also found not well-taken.
{¶ 24} On consideration whereof, this court finds that substantial justice has been done the party complaining and the judgment of the Wood County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal for which sum judgment is rendered against appellant on behalf of Wood County and for which execution is awarded. See App.R. 24.
Judgment affirmed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, J., Pietrykowski, J. Parish, J., concur.