DECISION AND JUDGMENT ENTRY
{¶ 1} This case is before the court on appeal from a judgment of the Wood County Court of Common Pleas, which, after a jury trial, found appellant, Isreal Flores, guilty of attempted intimidation of a witness in a criminal case, a felony of the fourth degree, in violation of R.C. 2923.02 and R.C. 2921.04(B), and sentenced him to 17 months imprisonment. For the reasons that follow, we affirm the judgment of the trial court.
 {¶ 2} The facts of this case mirror this court's factual recitation in our decision on the appeal of a companion case involving William Miller, the individual also convicted of attempted witness intimidation in association with the operative facts of this case. See State v. Miller,
6th Dist. No. WD-04-062, 2005-Ohio-3360. Those facts are as follows. On August 21, 2003, appellant was indicted for trafficking in marijuana under trial court Case No. 03 CR 330. Appellant had been housed in the same unit with William Miller, in the Wood County Justice Center, in early December 2003. On December 7, 2003, the day before a scheduled suppression hearing in appellant's drug trafficking case, a phone conversation initiated by appellant, while in jail, to Miller, was recorded and submitted into evidence at appellant's May 25, 2004 attempted intimidation trial. In the phone conversation, appellant explained to Miller that there would be a hearing the following day, on December 8, 2003, in the Wood County Court of Common Pleas, and appellant told Miller how to get there.
 {¶ 3} After determining the time and location of the hearing, Miller discussed how to get money to appellant in jail and mentioned that it could not come directly from Miller. Miller then expressed a concern that no names would come out during the hearing. Appellant, however, assured him that the name of the informant would have to come out, otherwise the state could only get him on "possession." Appellant stated, "They are going to mention his name." Miller responded, "That's what we need." Miller then admonished appellant to "act innocent" and to keep matters between the two of them and not to tell anyone else in jail. Appellant stated, "I appreciate the help," and Miller responded, "There is no problem. We're working on it." A woman then got on Miller's phone and appellant expressed to her that he was "doing the right thing for the right people." Thereafter, Miller got back on the phone and told appellant that there would be a "little meeting" held after the hearing and that appellant should call him back.
 {¶ 4} On the day of appellant's suppression hearing, December 8, 2003, two individuals were present in the audience at the courthouse. They were observed taking notes during the testimony. Miller was later identified as one of the individuals. The identity of the confidential informant in appellant's case was disclosed during this hearing.
 {¶ 5} A second taped phone conversation, from December 9, 2003, between appellant and Miller, was entered into evidence. In this second taped phone conversation, Miller assured appellant that "we're going to take care of business." Miller again asked appellant if he had told anyone who was in court on the day of the hearing because it would "blow the cover." Appellant assured Miller that he told officers that he did not know who was present in court. Miller told appellant that "we sent you out some money today" under the name "Maria," and that appellant should put her on his "list" if the money order did not get through to him in jail.
 {¶ 6} Miller and appellant then briefly discussed what had been disclosed at the hearing. They commented that "the guy" had been doing it for a long time, every time he got in trouble, since 1993. Miller stated that "we" played the tape loud and clear on the evening of December 8th, that "they" heard what they were "all" looking for, and that a lot of weight was taken off of a lot of people's shoulders. Appellant commented that "he" had cost him four years and that he could not believe what had been disclosed. Appellant stated that "something's gotta be done." Miller assured him, "It will be," but they had to wait for the right time. Miller then expressed to appellant that he "did good" and that "we" had a long talk about it "last night." Miller told appellant he knew that appellant was doing two extra years by just getting a name out, but that wherever he was imprisoned, there would be "boys" there to meet him and that he would be "welcomed with open arms." Appellant told Miller that the state had wanted him to turn state's evidence, to which Miller replied, "You ain't gonna have a life if you do that, Dude."
 {¶ 7} A search warrant was executed for Miller's home on December 23, 2003. Officers found two small tape recorders and a copy of Agent Mike Ackley's officer notes, regarding information the confidential informant had provided Agent Ackley throughout his investigation. Ackley testified at the attempted intimidation trial that he knew nothing of Miller from his investigation and that the notes did not mention Miller. The notes, however, did mention other information the confidential informant had provided about "Knuckles" and "Big Bob" dealing drugs for the Iron Coffins in Northwest Ohio and Southeast Michigan, and that Ted Dean had a stolen tractor at his residence.
 {¶ 8} Appellant now appeals the judgment against him, setting forth the following assignments of error:
 {¶ 9} "First Assignment of Error. The trial court erred in overruling the defendants objection to the admission of certain hearsay statements.
 {¶ 10} "Second assignment of error. The trial court erred in denying defendants [sic] motions for judgment of acquittal pursuant to Ohio Crim. R. 29(A).
 {¶ 11} "Third assignment of error. The evidence was insufficient as a matter of law to support the verdict.
 {¶ 12} "Fourth assignment of error. The verdict was against the manifest weight of the evidence."
 {¶ 13} In his first assignment of error, appellant contends that the taped phone conversations between appellant and Miller were not admissible under either Evid. R. 801(D)(2)(e) or Evid. R. 804(B)(3). First, appellant argues that the trial court erred in finding that the requirements of Evid. R. 801(D)(2)(e) did not apply because appellant was not charged in the indictment with the specific criminal offense of conspiracy. Appellant further asserts in applying Evid. R. 801(D)(2)(e), that the taped phone conversations were not admissible because the state failed to present any independent proof of a conspiracy between appellant and Miller. Second, appellant asserts that the state's apparent alternate basis for admission of the phone conversations under Evid. R. 804(B)(3) fails because Miller was not "unavailable." Appellant contends that underState v. Madrigal (2000), 87 Ohio St.3d 378, the phone conversations are neither reliable nor do they fall within a firmly rooted hearsay exception.
 {¶ 14} In response, the state appears to agree with appellant that the trial court erred in finding that Evid. R. 801(D)(2)(e) did not apply based on the lack of a conspiracy charge in the indictment. However, the state argues that it was harmless error because it did present independent proof of a conspiracy. The state cites both a witness identification of Miller in the courtroom on the day of the suppression hearing and Agent Ackley's officer's notes seized from Miller's house. The state makes no argument in its brief relative to admissibility under Evid. R. 804(B)(3) due to Miller's "unavailability."
 {¶ 15} Evid. R. 801(D)(2)(e) provides that a statement is not hearsay if it was made by a co-conspirator during and in furtherance of the conspiracy. "Statements of co-conspirators are not admissible under Evid. R. 801(D)(2)(e), however, until the proponent of the statement has made a prima facie showing of the existence of the conspiracy by independent proof." State v. Skatzes, 104 Ohio St.3d 195, 2004-Ohio-6391
at ¶ 102 citing State v. Carter, 72 Ohio St.3d 545, 1995-Ohio-104, paragraph three of the syllabus and State v. Lindsey, 87 Ohio St.3d 479,481, 2000-Ohio-465. "There is no requirement that explicit findings be made on the record." Skatzes at ¶ 102 citing State v. Robb,88 Ohio St.3d 59, 70, 2000-Ohio-275. Further, even the early admission of statements that could have been deemed hearsay at the time they were elicited is rendered harmless if independent proof of the conspiracy is admitted into evidence before the case is submitted to the jury. SeeState v. Jalowiec, 91 Ohio St.3d 220, 2001-Ohio-26.
 {¶ 16} We agree that the trial court erred in finding that Evid. R. 801(D)(2)(e) did not apply because there was no conspiracy charge in the indictment. Even if a substantive offense of conspiracy was not charged, the state can prove a conspiracy in order to introduce out-of-court statements by conspirators in accordance with Evid. R. 801(D)(2)(e).Robb, 88 Ohio St.3d 59, 68, 2000-Ohio-275; Skatzes, 104 Ohio St.3d 195,2004-Ohio-6391 at ¶ 105. With regard to proof of the existence of a conspiracy between appellant and Miller independent of the out-of-court statements themselves, Agent Ackley testified regarding jail phone records that established that appellant placed the two phone calls to a particular phone number. Agent Ackley further testified that upon executing the search warrant of Miller's residence, another officer found a phone bill that indicated the phone number for the residence matched the jail records of the outgoing call from appellant. Further, the search of Miller's residence produced a copy of Agent Ackley's notes that contained the confidential informant's name, some facts related to Agent Ackley's investigation of appellant's drug trafficking activities, as well as information regarding other illegal activity by other individuals. Agent Ackley testified that there was no discernable legitimate reason for Miller to have a copy of his officer notes related to appellant's drug trafficking case. Finally, two witnesses who were present in the courtroom at the time of the suppression hearing identified Miller as one of the persons in the audience taking notes during the suppression hearing.
 {¶ 17} Based on the foregoing, the court finds that the state presented evidence of a conspiracy independent of the statements in the taped phone conversations. Therefore, the taped phone conversations were admissible under Evid. R. 801(D)(2)(e). Based on this finding, appellant's arguments relative to the state's alleged alternate basis for admission of the phone conversations under Evid. R. 804(B)(3) is moot. Appellant's first assignment of error is not well-taken.
 {¶ 18} Next, the court will address appellant's second and third assignments of error which challenge the sufficiency of the evidence. Crim. R. 29(A) provides for an entry of a judgment of acquittal if the evidence is insufficient to sustain a conviction. Appellant not only claims error in the trial court's denial of his motion for judgment of acquittal, but also asserts that the evidence was insufficient as a matter of law to support the guilty verdict.
 {¶ 19} We have recently stated:
 {¶ 20} "When reviewing the denial of a Crim. R. 29(A) motion, an appellate court must evaluate whether `the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt.' See State v. Bridgeman (1978), 55 Ohio St.2d 261, 381 N.E.2d 184, syllabus. An appellate court reviews a denial of a Crim. R. 29 motion for acquittal using the same standard that is used to review a sufficiency of the evidence claim. See State v. Carter (1995), 72 Ohio St.3d 545, 553,1995-Ohio-104." State v. Reyes, 6th Dist. No. WD-03-059, 2005-Ohio-2100, at ¶ 21.
 {¶ 21} We have further noted:
 {¶ 22} "`The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" Reyes, at ¶ 22 quoting State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 23} Finally, with reference to "sufficiency of the evidence," applicable to both appellant's second and third assignments of error, it is a legal standard that the court applies to determine if a case should go to a jury or to determine whether there is sufficient evidence to support a verdict. State v. Thompkins (1997), 78 Ohio St.3d 380, 386,1997-Ohio-52, quoting Black's Law Dictionary (6 Ed. 1990) 1433. According to the Supreme Court of Ohio, "sufficiency is a test of adequacy." Id. The issue of the sufficiency of evidence presents a purely legal question for the court. State v. Farr, 10th Dist. No. 02AP-167, 2002-Ohio-5523, at ¶ 65. In contrast, questions of credibility of witnesses are matters left to the trier of fact. State v. Wakely (May 21, 1999), 6th Dist. No. E-98-069, citing State v. DeHass (1967), 10 Ohio St.2d 230. These matters are addressed under a manifest weight standard. In re Martin (May 10, 2001), 8th Dist. No. 78184, citing State v. Martin (1983)20 Ohio App.3d 172, 175.
 {¶ 24} Regarding the attempted intimidation offense, R.C. 2921.04
provides:
 {¶ 25} "(B) No person, knowingly and by force or by unlawful threat of harm to any person or property, shall attempt to influence, intimidate, or hinder the victim of a crime in the filing or prosecution of criminal charges or an attorney or witness involved in a criminal action or proceeding in the discharge of the duties of the attorney or witness."
 {¶ 26} Regarding attempt, 2923.02(A) provides:
 {¶ 27} "No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense."
 {¶ 28} Appellant argues that he knew the identity of the confidential informant prior to the suppression hearing. Therefore, the comments between appellant and Miller during the phone conversations were directed solely towards the confidential informant's credibility, rather than towards publishing his identity. In support appellant points to his trial counsel's subpoena of the confidential informant's criminal records. Said subpoena is dated prior to the suppression hearing. However, Agent Ackley testified that he believed that prior to the suppression hearing, appellant had suspicions, but was not positive of the identity of the confidential informant. Further, during the pre-suppression hearing conversation, appellant stated, "They are going to mention his name." Miller responded, "That's what we need." Clearly, confirmation of the confidential informant's identity was the focus of the taped phone conversations.
 {¶ 29} Appellant also points to portions of Agent Ackley's testimony in which he describes his interpretation of the phone conversations between appellant and Miller. At one point Agent Ackley described Miller as "talking around" things and that some things Miller said could be taken two different ways. However, the court agrees with the state that Agent Ackley's testimony when viewed in total and in context, reveals the likely meaning of these conversations. Specifically, both appellant and Miller viewed getting definitive confirmation of the confidential informant's name and passing that information along as being helpful to other individuals who were subjects of an ongoing investigation by the authorities. Further, Agent Ackley testified in his professional opinion that certain statements implied that Miller was going to have the confidential informant hurt or killed.
 {¶ 30} In addition, although appellant attempts to minimize his participation in the phone conversations by stating that he was "largely silent," a review of the tape reveals otherwise. In the December 7 conversation, appellant explained to Miller that there would be a hearing the following day and told Miller how to get to the Wood County Court of Common Pleas. Appellant assured Miller that the name of the informant would have to come out and that "They are going to mention his name." Appellant stated to Miller, "I appreciate the help." During the conversation on December 9, the day after the suppression hearing, appellant and Miller briefly discussed what had been disclosed at the hearing. Appellant commented that "he" had cost him four years and that he could not believe what had been disclosed. Appellant stated that "something's gotta be done." Clearly, appellant was an active participant in this conversation with Miller.
 {¶ 31} Accordingly, we find, after viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime of attempted intimidation of a witness proven beyond a reasonable doubt. Therefore, appellant's second and third assignments of error are not well-taken.
 {¶ 32} Finally, we consider appellant's fourth assignment of error in which he contends that the verdict was against the manifest weight of the evidence. Under a manifest weight standard, an appellate court sits as a "thirteenth juror" and may disagree with the fact finder's resolution of the conflicting testimony. State v. Thompkins (1997), 78 Ohio St.3d 380,387. The appellate court, "`reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against conviction.'" Id., quoting State v. Martin (1983), 20 Ohio App.3d 172,175.
 {¶ 33} Appellant again asserts that the topic of the phone conversations was the confidential informant's credibility rather than his identity. Appellant also again describes Agent Ackley's interpretation of the "threatening" nature of the phone conversations as completely vague or contradictory. We disagree. After reviewing the tape and the transcript of the trial proceedings and considering the credibility of the witnesses, we find that the trier of fact did not "lose its way" and thereby create such a manifest miscarriage of justice that appellant's conviction should be reversed as being against the manifest weight of evidence. Appellant's fourth assignment of error is therefore, not well-taken.
 {¶ 34} Upon due consideration, we find that substantial justice was done the party complaining, and the judgment of the Wood County Court of Common Pleas is affirmed. Appellant is ordered to pay the court costs of this appeal for which sum judgment is rendered against appellant on behalf of Wood County and for which execution is awarded. See App. R. 24.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4, amended 1/1/98.
Pietrykowski, J. Singer, P.J. Skow, J. Concur.