[Cite as *State v. Skipper*, 2013-Ohio-4508.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

STATE OF OHIO

      Plaintiff-Appellee

v.

SHAYNE SKIPPER

      Defendant-Appellant


Appellate Case No.    25404

Trial Court Case No.   2012-CRB-6870

(Criminal Appeal from
 Municipal Court)

. . . . . . . . . . .

O P I N I O N

Rendered on the 11th day of October, 2013.

. . . . . . . . . . .

GARRETT P. BAKER, Atty. Reg. No. 0084416, Assistant City Prosecutor, City of Dayton Prosecutor's Office, 335 West Third Street, Room 372, Dayton, Ohio 45402
      Attorney for Plaintiff-Appellee

PAUL E. WAGNER, Atty. Reg. No. 0067647, 111 North Bridge Street, P.O. Box 315, Gettysburg, Ohio 45328
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

WELBAUM, J.

## I. STATEMENT OF FACTS AND PROCEDURAL HISTORY

{¶ 1}   Appellant, Shayne Skipper, was charged with three counts of Aggravated Menacing under R.C. 2903.21. A trial before the court was held on September 13, 2012. Skipper was found guilty as charged. Skipper was sentenced to three terms of 180 days in jail, to be served concurrently.

{¶ 2}   The facts at the trial demonstrated that Skipper and four individuals acting at his direction, were slashing tires and breaking car windows with baseball bats outside a home on Huffman Avenue, in Dayton, Ohio. One of the three adult females watching from a porch announced loudly that she was calling the police. Skipper quickly ran up to the porch and confronted Andrea Booker. While he was face to face with Booker in close proximity, he pointed the sharp end of a knife at her face. He then waved the knife and pointed it close to Diamond Campbell and Dionnie Thaler's faces and throats, and in close proximity of a two-year old child.

{¶ 3}   Skipper told them, "Bitches, you ain't seen shit, get back in the house." Am. T., p.6. Booker described Skipper as hostile, scary, and acting "crazy like he was on something." Am. T., p.7.   Campbell described Skipper as "very hostile and physical." Am. T., p.17. As Skipper threatened the women verbally and with the knife, he moved toward them. All three responded by backing up into the house. While the women were in the house, they watched Skipper continue yelling at the other four men as they continued to slash tires and break car windows. Am.T., p.8.   Some people then came out of a bar and starting fighting with the five men. Shots were fired. When more shots were fired, someone shouted "Shoot it again, shoot it

again." Am. T., p.8. As the melee escalated, the women were describing the events to the 911 operator. Am. T., p.8.

{¶ 4} After the police arrived, Skipper and the other four men were arrested. The police requested Booker and Campbell to identify the perpetrators. Campbell testified that when she approached the police car, Skipper was sitting in the back seat.  He looked at her and drew his finger across the front part of his neck, as if to say that he would slash their throats when he was released. Am. T., p.15.

{¶ 5}  Booker testified that she approached the police car to make the identification. The transcript indicates the following exchange:

State Q:          Was he [SKIPPER] saying anything to you at the time?

Booker A:         He wasn't but his other person that he was with said, "Bitch, wait till we get

           out, I'm going to slash your throat."

The Defense: Objection, relevance on that?

The Court:       That happened almost simultaneously.

The Defense: That's another person that's not even here.

The Court:       I think it could be characterized as an excited utterance.

The Defense: Okay.

The Court:       And, As an exception to the hearsay rule, the court would allow the answer

          to stand on the record. The objection is overruled.

        Am. T., p.8.

{¶ 6}  Skipper advocates reversal of the convictions as a result of this evidentiary ruling on the basis of irrelevancy and a violation of the hearsay rules.

## II. ASSIGNMENT OF ERROR

**{¶ 7}** Skipper assigns the following Assignment of Error:

The Trial Court Erred in Allowing an Out-of-Court Statement to be Solicited Through the Testimony of a Witness.

Under this assignment of error, Skipper presents the issue whether "The out-of-court statement, 'Bitch, wait till we get out, I'm going to slash your throat,' satisfies the elements of an excited utterance pursuant to Evid.R. 803(2) and should have been excluded as hearsay.'

## III. LEGAL ANALYSIS

## THE HEARSAY OBJECTION

## A. EXCITED UTTERANCE

**{¶ 8}** Although it is a close call, the trial court did not abuse its discretion by admitting the statement under the excited utterance exception. In this regard, Evid.R. 803(2) provides:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

\*\*\*

(2) Excited Utterance. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

**{¶ 9}** Notably, there is no evidence describing the demeanor of the declarant. In most cases where this exception is applied, there is direct testimony describing the apparent emotional state of the declarant. *State v. Smith*, 87 Ohio St.3d 424, 433, 721 N.E.2d 93 (2000) (a declarant co-conspirator was described as "excited and angry" when he made threats to a victim after arrival of a police officer at a confrontational scene). *See also, State v. Ward*, 10th Dist. Franklin

No. 10AP-293, 2010-Ohio-4614, ¶ 18 (victim declarant was "visibly fearful and upset" shortly after the declarant was punched and placed in a choke hold by the defendant).

{¶ 10}   In *State v. McCaleb*, 11th Dist. Lake No. 2002-L-157, 2004-Ohio-5940, the court elaborated on this hearsay exception when it stated:

> Evid.R. 803(2), provides " '[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition[,]' " is an admissible exception to the hearsay rule. " 'For a purported excited utterance to be admissible there must have been: (1) an event startling enough to produce a nervous excitement in the declarant; (2) the statement must have been made while under the stress of excitement caused by the event; (3) the statement must relate to the startling event; and (4) the declarant must have personally observed the event.' " *State v. Shelton*, 11th Dist. No. 2001–P–0050, 2002–Ohio–5157, at ¶ 24, citing *State v. Taylor (1993)*, 66 Ohio St.3d 295, 300–301, 612 N.E.2d 316. *McCaleb* at ¶41.

{¶ 11}   The Supreme Court of Ohio relaxed the requirement that the statement be limited to a "personally observed event" when it allowed admission of a threat in *Smith. Id.* at 433-434.

{¶ 12}   The trial court evidently inferred from Skipper's demeanor during the threats, the perpetrators' coordinated conduct, the violent nature of the crime spree including fighting and shots fired, and finally the declarant's arrest, that the declarant was likely under the stress of excitement caused by the event or condition. The trial court could have reasonably concluded from the testimony that the declarant made the threat while under the stress of excitement caused by the melee since Skipper was in the process of being identified at the scene.

{¶ 13}   The statement does not violate the hearsay rules for other reasons. Therefore,

even if the trial court erred in its reasoning, it would be harmless error.

## B. VERBAL ACT

{¶ 14}   First, threats are "verbal acts" which are not hearsay. Threats are offered to prove the words were spoken rather than to prove the truth of the statement. The very act of uttering the words constitutes the threat whether or not the declarant actually intended to act in the manner described in the threat. *Smith*, 87 Ohio St.3d at 434, 721 N.E.2d 93;  *Bryant v. Spear-Hardy*, 2d Dist. Montgomery No. 23449, 2010-Ohio-1903, ¶ 37; *Hemphill v. Dayton*, 2d Dist. Montgomery No. 23782,   2011-Ohio-1613, ¶ 69; and *State v. Lamb*, 12th Dist. Butler, Nos. CA2002-07-171, CA2002-80-192, 2003-Ohio-3870, ¶ 79, citing *State v. Williams*, 39 Ohio St.3d 346, 348, 528 N.E.2d 910 (1988).

## C. STATEMENT BY A CO-CONSPIRATOR

{¶ 15}   Secondly, the evidence is not hearsay as a statement by co-conspirator under Evid.R. 801(D)(2)(e).   That rule provides:

> A statement is not hearsay if:
>
> ***
>
> (2) *** The statement is offered against a party and is *** (e) a statement by a co-conspirator of a party during the course and in furtherance of the     conspiracy upon independent proof of the conspiracy.

{¶ 16} After reviewing the facts, we conclude that the threat was a statement by Skipper's co-conspirator during the course and in furtherance of the conspiracy.   The trial court may admit evidence under this rule where the substantive offense of conspiracy is not charged. *See State v. Skatzes*, 104 Ohio St.3d 195, 2004-Ohio-6391, 819 N.E.2d 215, ¶ 105, citing *State v. Robb*, 88

Ohio St.3d 59, 68, 723 N.E.2d 1019 (2000), and *State v. Flores*, 6th Dist. Wood No. WD-04-046, 2005-Ohio-5254**,** ¶ 15.

{¶ **17**} "Independent proof of conspiracy merely requires that the State present evidence sufficient to raise the inference of conspiracy." *State v. Croom*, 2d Dist. Montgomery No. 25094, 2013-Ohio-3377, ¶ 66, citing *State v. Spires*, 7th Dist. Noble No. 04 NO 317, 2005–Ohio–4471, ¶ 40. The State met this burden. Witnesses described Skipper's leadership in directing the other four men in the commission of the crimes and the specific threats Skipper made to the women during the crime spree.

{¶ **18**} A conspiracy may continue after the principal crime has ended. In *State v. Zan*, 2d Dist. Montgomery No. 24600, 2013-Ohio-1064, we stated:

"A conspiracy does not necessarily end with the commission of the crime. A statement made by a co-conspirator after the crime may be admissible under Evid.R. 801(D)(2)(e) if it was made in an effort to conceal the crime." (Citations omitted.) *State v. Braun,* 8th Dist. Cuyahoga No. 91131, 2009-Ohio-4875, ¶109; see also *State v. Burns,* 5th Dist. Richmond No. 10CA130, 2011-Ohio-5926, ¶ 92. As we stated in *State v. Boone,* 2d Dist. Montgomery No. 7516, 1983 WL 4843 (Mar. 4, 1983):

"The acts and declarations of a conspirator are admissible against a co-conspirator when they are made during the pendency of the wrongful act, and this includes not only the perpetration of the offense, but also its subsequent concealment. *The theory for the admission of such evidence is that persons who conspire to commit a crime, and who do commit a crime, are as much concerned, after*

*the crime, with their freedom from apprehension, as they were concerned, before the crime, with commission; the conspiracy to commit the crime devolves after the commission thereof into a conspiracy to avoid arrest and implication.*(Emphasis in original.) *Id.* at \*4, quoting *State v. De Righter*, 145 Ohio St. 552, 558, 62 N.E.2d 332 (1945)." *Zan* at ¶ 42.

{¶ 19}  Here, the evidence shows that the conspiracy to conceal the crimes continued after apprehension. Skipper and his accomplice threatened the witnesses with a common theme of cutting the witnesses' throats both during and after commission of the property crimes.

{¶ 20}  The "statement" in the rule is also not limited to those made between co-conspirators.   In *Smith*, the court held that a threat made toward a third-party non-co-conspirator is an admissible statement under this rule. *Smith*, 87 Ohio St. 3d at 434, 721 N.E.2d 93.

## IV. RELEVANCY

{¶ 21} Finally, the threat against Booker is relevant and is not overly prejudicial under Evid.R. 403.   It corroborates the prior testimony that indicated Skipper and the four men he was directing were engaged in a common purpose.   Skipper and the co-conspirator's threats were consistent.   Skipper was not unduly prejudiced by admission of the statement.

## V. CONCLUSION

{¶ 22} The threat made by Skipper's co-conspirator did not violate the hearsay rules because it qualified as an excited utterance, a verbal act, and as a statement by a co-conspirator during the course and in furtherance of the conspiracy.  The statement was also relevant to the

issues in the case and was not prejudicial. Therefore, the trial court did not abuse its discretion in admitting the threat. We Affirm the trial court judgment.

HALL, J., concurring:

{¶ 23} On this record I would determine that the statement made from the rear of the police cruiser by the defendant's accomplice does not qualify as an excited utterance. However, I do agree with the other rationales in the lead opinion as to why admission of the statement is not reversible error. Accordingly, I concur.

FROELICH, J., concurs in judgment only.

. . . . . . . . . . . . .

Copies mailed to:

Garrett P. Baker
Paul E. Wagner
Hon. John S. Pickrel